UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE, individually and on behalf of
all others similarly situated,

        Plaintiff,

v.

FIRSTBANK PUERTO RICO and FIRST BANCORP,

        Defendants.

Case No.: 26-cv-5327-JSR

**FIRSTBANK PUERTO RICO AND FIRST BANCORP'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................3

STANDARD OF REVIEW ....................................................................................................3

ARGUMENT ........................................................................................................................4

I.      The Court Lacks Personal Jurisdiction Over FirstBank ........................................4

II.     The Complaint Fails to State a TVPA Participation Claim (Count I) ..................8

        A.      The Complaint Does Not Plausibly Allege Active Participation............................8

        B.      The Complaint Does Not Plausibly Allege Knowledge ......................................12

        C.      The Complaint Does Not Plausibly Allege that FirstBank
                Benefited from Participation in a Trafficking Venture..........................................14

III.    The Complaint Fails to State a TVPA Obstruction Claim (Count II)................................15

IV.     The Complaint Fails to State a Claim Under the Gender-Motivated
        Violence Protection Act (Count III) ...........................................................................18

        A.      The GMVA Does Not Apply to FirstBank's Out-of-State Conduct.....................18

        B.      New York Law Preempts the GMVA's Revival and Lookback
                Mechanisms ..........................................................................................................20

        C.      Plaintiff Does Not Plausibly Allege GMVA Liability..........................................21

        D.      The 2026 GMVA Amendment Violates Due Process .........................................23

CONCLUSION...................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado v. Mount Pleasant Cottage Sch. Dist.*,
　404 F. Supp. 3d 763 (S.D.N.Y. 2019)..........................................................................4

*Aquiline Cap. Partners LLC v. FinArch LLC*,
　861 F. Supp. 2d 378 (S.D.N.Y. 2012).........................................................................6

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009).................................................................................................4, 16

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)......................................................................................................3

*Bellino v. Tallarico*,
　2024 WL 134407 (S.D.N.Y. Feb. 21, 2024).............................................................20

*Bensky v. Indyke,*
　743 F. Supp. 3d 586 (S.D.N.Y. 2024)...................................................................18, 23

*Berdeaux v. OneCoin Ltd.*,
　561 F. Supp. 3d 379 (S.D.N.Y. 2021).....................................................................5, 19

*Calcano v. Swarovski N. Am. Ltd.*,
　36 F.4th 68 (2d Cir. 2022) ..........................................................................................4

*Charles Schwab Corp. v. Bank of Am. Corp.*,
　883 F.3d 68 (2d Cir. 2018)...........................................................................................5

*Doe #1 v. Red Roof Inns, Inc.*,
　21 F.4th 714 (11th Cir. 2021) ....................................................................................12

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
　671 F. Supp. 3d 387 (S.D.N.Y. 2023)................................................................. *passim*

*Doe 1 v. Gov't of U.S.V.I.*,
　771 F. Supp. 3d 379 (S.D.N.Y. 2025)..........................................................................7

*Doe 3 v. Indyke*,
　801 F. Supp. 3d 200 (S.D.N.Y. 2025).........................................................................19

*Doe v. Bank of Am., N.A.*,
　819 F. Supp. 3d 314 (S.D.N.Y. 2026)................................................................. *passim*

*Doe v. Combs*,
   2024 WL 4987044 (S.D.N.Y. Dec. 5, 2024) .................................................................24

*Doe v. Fitzgerald*,
   2022 WL 425016 (C.D. Cal. Jan. 6, 2022) ...................................................................17

*Doe v. Grindr Inc.*,
   128 F.4th 1148 (9th Cir. 2025) ...............................................................................9, 15

*Does 1–6 v. Reddit, Inc.*,
   51 F.4th 1137 (9th Cir. 2022) ....................................................................................14

*Dogan v. Harbert Const. Corp.*,
   507 F. Supp. 254 (S.D.N.Y. 1980) ...............................................................................6

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021)......................................................................................................5

*Freedom Holdings Inc. v. Spitzer*,
   357 F.3d 205 (2d Cir. 2004).......................................................................................19

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*,
   2017 WL 3600425 (S.D.N.Y. Aug. 18, 2017)..............................................................5

*Geiss v. Weinstein Co. Holdings LLC*,
383 F. Supp. 3d 156 (S.D.N.Y. 2019)...............................................................11, 14, 15

*Gen. Motors Corp. v. Romein*,
   503 U.S. 181 (1992)....................................................................................................25

*Gilbert v. U.S. Olympic Comm.*,
   423 F. Supp. 3d 1112 (D. Colo. 2019)........................................................................17

*Goshen v. Mut. Life Ins. Co.*
   98 N.Y.2d 314 (N.Y. Ct. App. 2002)..........................................................................18

*Hau Yin To v. HSBC Holdings, PLC*,
   700 F. App'x 66 (2d Cir. 2017) ....................................................................................7

*Healy v. Beer Inst.*,
   491 U.S. 324 (1989)....................................................................................................19

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
   529 F. Supp. 3d 111 (S.D.N.Y. 2021)...........................................................................4

*In re Agape Litig.*,
681 F. Supp. 2d 352 (E.D.N.Y. 2010) ...............................................................................22

iv

*Kelly v. Combs*,
   2025 WL 2978058 (S.D.N.Y. Oct. 22, 2025) ..........................................................................18

*Kolbeck v. LIT Am., Inc.*,
   939 F. Supp. 240 (S.D.N.Y. 1996) .......................................................................................21

*Kreit v. Byblos Bank S.A.L.*,
   2023 WL 6977448 (S.D.N.Y. Oct. 22, 2023), *aff'd,* 2025 WL 338194 (2d Cir.
   Jan. 30, 2025) .........................................................................................................................6

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994)..........................................................................................................24, 25

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)..................................................................................................21

*Levin v. Sarah Lawrence Coll.*,
   747 F. Supp. 3d 645 (S.D.N.Y. 2024)...................................................................................15

*Licci v. Lebanese Canadian Bank ("Licci II")*,
   20 N.Y.3d 327 (2012) .........................................................................................................5, 6

*Licci ex rel. Licci v. Lebanese Canadian Bank ("Licci III")*,
732 F.3d 161 (2d Cir. 2013)......................................................................................................5

*Moussaoui v. Bank of Beirut & the Arab Countries*,
   2024 WL 4615732 (2d Cir. Oct. 30, 2024).............................................................................6

*Nesbeth v. N.Y.C. Mgmt. LLC*,
   2019 WL 110953 (S.D.N.Y. Jan. 4, 2019) .............................................................................4

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018)..............................................................................8, 11

*Parker v. Alexander*,
   779 F. Supp. 3d 361 (S.D.N.Y. 2025), *appeal pending*, No. 25-487 (2d Cir.).......................20

*Plusgrade L.P. v. Endava Inc.*,
   2023 WL 2402879 (S.D.N.Y. Mar. 8, 2023) ..........................................................................4

*Rosner v. Bank of China*,
   528 F. Supp. 2d 419 (S.D.N.Y. 2007)...................................................................................22

*S.J. v. Choice Hotels Int'l, Inc.*,
   473 F. Supp. 3d 147 (E.D.N.Y. 2020) ..................................................................................12

*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018)..................................................................................................21

*State Farm Fire & Cas. Co. v. Swizz Style, Inc.*,
  246 F. Supp. 3d 880 (S.D.N.Y. 2017).................................................................................5

*Totilo v. Herbert*,
  538 F. Supp. 2d 638 (S.D.N.Y. 2008).................................................................................8

*U.S. v. Farah*,
766 F.3d 599 (6th Cir. 2014) ..............................................................................................15

*Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*,
  477 F. Supp. 3d 241 (S.D.N.Y. 2020)...............................................................................6, 7

*Villalobos v. Telemundo Network Grp. LLC*,
  2025 WL 2687948 (S.D.N.Y. Sept. 19, 2025)....................................................................14

*Walden v. Fiore*,
  571 U.S. 277 (2014)............................................................................................................7

*Watkins v. First Citizens Bank & Tr. Co., Inc.*,
  2017 WL 4857959 (D.S.C. Oct. 2, 2017) ...........................................................................17

**Other Authorities**

Local Law 73/2000 § 1, eff. Dec. 19, 2000 ...............................................................................23

N.Y.C. Admin. Code §§ 10-1101–1107 ....................................................................................18

N.Y.C. Admin. Code § 10-1104 ...........................................................................................22, 23

N.Y.C. Admin. Code § 10-1104.1 .........................................................................................24, 25

**INTRODUCTION**

FirstBank is at least the fifth financial institution to be targeted by the same group of plaintiffs' lawyers over alleged links to Jeffrey Epstein. The 319-paragraph Complaint cuts and pastes from those past pleadings and had the benefit of 3.5 million pages of publicly released documents pursuant to the Epstein Files Transparency Act. As a result, the Complaint is filled with allegations of misconduct by other entities but short on one key ingredient—facts sufficient to state a claim against FirstBank. The few facts it does include show that FirstBank provided routine banking services that cannot support claims under the Trafficking Victims Protection Act ("TVPA") or the New York City Gender-Motivated Violence Protection Act ("GMVA"). This deficiency is fatal and the Complaint should be dismissed with prejudice.[1]

Count I fails because FirstBank provided routine banking services and Plaintiff fails to show the "active participation" required to satisfy the participation element of a TVPA claim. There are no allegations that FirstBank structured transactions to evade scrutiny, provided specially tailored services, facilitated transfers in a non-routine manner, or played any role in formulating any aspect of Epstein's financial strategy. Nor are there allegations identifying a single person at FirstBank who was involved in, knew about, or in any way furthered Epstein's crimes.

The allegations on the elements of "knowledge" and "benefit" fare no better. Plaintiff identifies no FirstBank employee alleged to have personal knowledge of Epstein's trafficking

---

[1] The Complaint's flaws go beyond the conclusory allegations against FirstBank and include fictitious citations to federal regulatory actions. Paragraph 66 of the Complaint references an "Office of the Comptroller of the Currency's consent order against Deutsche Bank" and "FinCEN enforcement actions," against that bank's handling of Epstein's accounts. Compl. ¶ 66. It also provides a purported control number for the OCC consent order "OCC AA-EC-2020-44." There does not appear to be a Consent Order with that control number. Nor is there any public record of any "FinCEN enforcement actions" against Deutsche Bank relating to Epstein. Indeed, because Deutsche Bank is a New York chartered Federal Reserve Member bank and hence outside OCC jurisdiction, it is not clear how there *could* be an OCC order against Deutsche Bank. These apparently fictitious or hallucinated citations give rise to further questions about the veracity of all the Complaint's allegations.

activity or of Jane Doe specifically, does not point to the sort of red flags that might give constructive knowledge, and plausibly alleges only that FirstBank earned ordinary fees from the Epstein accounts without identifying a single customer or relationship that FirstBank gained because of Epstein.

Count II fails for the simple reason that Plaintiff has not pled facts to support it and the Complaint's own allegations negate any inference of obstruction. FirstBank filed a Suspicious Activity Report ("SAR") just eleven days after Epstein's July 2019 arrest. Compl. ¶ 222. That filing demonstrates assistance to law enforcement as soon as the bank became aware of an investigation—not obstruction. Indeed, this Court rejected a nearly identical obstruction claim against The Bank of New York Mellon Corporation, noting that a SAR filing that was "barely a month after Epstein's arrest"—more than twice as long as the FirstBank SAR filing alleged in the Complaint—"is inconsistent with the theory that [the Bank] acted to intentionally obstruct the investigation of TVPA violations." *Doe v. Bank of Am., N.A.*, 819 F. Supp. 3d 314, 335 (S.D.N.Y. 2026) ("*Bank of Am.*").

Count III involves a novel application of a New York City ordinance to reach, seemingly, all conduct occurring in all places. Plaintiff faces a steep climb. FirstBank is not aware of any case where the GMVA has been stretched to apply to a financial institution in the way Plaintiff proposes. Even if it did apply, the Complaint pleads only bare statutory labels—not facts—to support its claim, and fails to establish that the alleged GMVA violation proximately caused harm to Jane Doe specifically. Even assuming Plaintiff could state a claim, additional obstacles remain: the GMVA cannot reach conduct outside of New York City; the GMVA's revival and lookback provisions are preempted; and applying the law to conduct that predates its amendment adding secondary liability provisions violates due process.

In addition to failing to state a claim under Rule 12(b)(6), the Complaint should be dismissed under Rules 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue.

## BACKGROUND

First BanCorp is a financial holding company headquartered in Puerto Rico and the parent company of FirstBank Puerto Rico. FirstBank Puerto Rico (together with First BanCorp, "FirstBank"), is a banking institution that operates in Puerto Rico (its principal place of business), the United States Virgin Islands, South Florida, and the British Virgin Islands. Compl. ¶¶ 21–23. Without distinguishing between the two entities, the Complaint alleges that FirstBank maintained accounts and banking relationships with Epstein and Epstein-related entities. *See, e.g.*, Compl. ¶¶ 4–6, 196–206. According to Plaintiff, FirstBank processed transfers and withdrawals associated with those accounts, waived fees for Epstein related accounts, and was listed by Epstein as a banking reference in connection with his efforts to establish his own banking institution. Compl. ¶¶ 196–206, 208–19, 230–32, 236. Plaintiff alleges that FirstBank received ordinary banking revenue from the relationship, including "interest, commissions, service fees, and other financial benefits." Compl. ¶¶ 9, 83, 252.

The Complaint also alleges that FirstBank failed to satisfy its anti-money laundering obligations by inadequately monitoring Epstein-related activity, failing to conduct appropriate due diligence, and delaying the filing of SARs. Compl. ¶¶ 63–83, 221–22, 229, 267–70. It identifies various transfers, payments, and other transactions that Plaintiff characterizes as suspicious. Compl. ¶¶ 208–19, 230.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is facially plausible when the facts allow a court 'to draw the reasonable inference

3

that the defendant is liable for the misconduct alleged.'" *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 777 (S.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*.

To withstand dismissal, the plaintiff must offer more than "labels and conclusions," "naked assertions devoid of factual enhancement," or "threadbare recitals of the elements of a cause of action." *Id*. The Court need not "accept as true a legal conclusion couched as a factual allegation," nor must it accept "conclusory statements." *Id.* "Assessing plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

### I.    The Court Lacks Personal Jurisdiction Over FirstBank

The Complaint fails to establish personal jurisdiction because it relies on impermissible group pleading.[2] "To allege personal jurisdiction over a defendant, group pleading is not permitted." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021). A plaintiff "must carry his burden with respect to each defendant individually," *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 396 (S.D.N.Y. 2021), and "may not refer to

---

[2] This improper group pleading is also grounds for dismissal. *See, e.g.*, *Nesbeth v. New York City Mgmt. LLC*, 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019) ("'[I]t is well-established in this Circuit that plaintiffs cannot simply lump defendants together for pleading purposes,' and that 'Rule 8(a) is violated where a plaintiff, by engaging in group pleading, fails to give each defendant fair notice of the claims against it.'"); *Plusgrade L.P. v. Endava Inc.*, 2023 WL 2402879, at *5 (S.D.N.Y. Mar. 8, 2023) ("'[T]he fact that two separate legal entities may have a corporate affiliation does not alter [the Rule 8] pleading requirement' that a defendant is entitled to notice of the claims brought against it.").

affiliated defendants by a conclusory collective name unless plaintiffs adequately allege that the conduct of one affiliate is attributable to another," *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, 2017 WL 3600425, at *6 (S.D.N.Y. Aug. 18, 2017).[3] Since personal jurisdiction here is based on improper group pleading, the Complaint should be dismissed.

This threshold deficiency aside, the Complaint fails to establish personal jurisdiction over either Defendant. A court may exercise general personal jurisdiction only when a defendant is "essentially at home" in the forum State. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Corporations are "at home" in two places: their State of incorporation and their principal place of business. *Id.* at 358–59. For both FirstBank Puerto Rico and First BanCorp, New York is neither.

To subject a defendant to specific personal jurisdiction, plaintiff must allege facts that satisfy the requirements of both New York's long-arm statute and constitutional due process. *See State Farm Fire & Cas. Co. v. Swizz Style, Inc.*, 246 F. Supp. 3d 880, 886 (S.D.N.Y. 2017). Under New York's long arm statute § 302(a)(1), personal jurisdiction is established where (1) the defendant has transacted business within the state, and (2) the claim asserted arises from that business activity. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) ("*Licci IV*"). "Transacting business" requires purposeful activity—volitional acts by which the defendant "avail[s] itself of the privilege of conducting activities [within the forum State]." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) ("*Licci II*"). And the "arising from" prong of the analysis requires a "substantial relationship" or "articulable

---

[3] For example, in *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018), the Second Circuit affirmed dismissal of claims against several banking defendants where "[e]ach of those 'Defendants' [was] actually two distinct Defendants—a parent and a wholly owned subsidiary—that the complaint collapse[d] into one," making it "impossible to determine" whether both entities had the requisite contacts.

nexus" between the transaction and the claim. *Id.* at 66. Plaintiff advances five bases for asserting specific personal jurisdiction. None work.

**Tolling Agreement**. First, Plaintiff invokes provisions of a "tolling agreement" that does not exist. Compl. ¶ 14. The parties negotiated draft tolling language, but Plaintiff rejected the last iteration of the agreement, and no agreement was finalized. Plaintiff's attempt to establish personal jurisdiction based on provisions of a draft agreement she rejected is indicative of just how shaky the grounds for jurisdiction are here. Even if the draft had been finalized, the existence of a forum selection clause alone cannot establish personal jurisdiction over an out of state defendant. *Aquiline Cap. Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378 (S.D.N.Y. 2012); *Dogan v. Harbert Const. Corp.*, 507 F. Supp. 254, 263 (S.D.N.Y. 1980) ("New York law is well settled that a choice of law provision in a contract does not constitute a voluntary submission to personal jurisdiction.").

**Correspondent Banks**. Next, Plaintiff alleges FirstBank maintained "correspondent and clearing relationships with New York-based financial institutions." Compl. ¶ 14. This does not establish personal jurisdiction. *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 337–38 (2012) ("*Licci III*"); *see also Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 253 (S.D.N.Y. 2020); *Kreit v. Byblos Bank S.A.L.*, 2023 WL 6977448, at \*6 (S.D.N.Y. Oct. 22, 2023), *aff'd,* 2025 WL 338194 (2d Cir. Jan. 30, 2025) ("[W]here a plaintiff makes only 'broad allegations regarding correspondent banking relationships and accounts maintained by the defendants in New York' that 'do not arise out of any *specific* transaction . . . conducted by the defendants in New York,' the plaintiff [fails] to make the requisite showing to warrant personal jurisdiction.") (emphasis in original).

The Complaint mentions a correspondent bank relationship with Citibank once in passing and refers broadly to transfers "made through New York Banks." Compl. ¶¶ 14, 230. But it does not allege any facts or details to adequately tie transactions to New York—falling well short of the standard. *Moussaoui v. Bank of Beirut & the Arab Countries*, 2024 WL 4615732, at *2 (2d Cir. Oct. 30, 2024) (allegation that transfers at issue were executed "using the New York Banks" were "conclusory statements" lacking the "factual specificity" required to establish personal jurisdiction, where the plaintiff "provided no details concerning the particulars of these transactions").[4]

***Wire Instructions and Emails***. Next, Plaintiff tries to base personal jurisdiction on wire instructions and email communications between FirstBank and "New York-based counterparties." Compl. ¶ 14(c)-(d). This too falls short. "Communication and transmission of information" to and from New York entities "do not give rise to personal jurisdiction." *Hau Yin To v. HSBC Holdings, PLC,* 700 F. App'x 66, 67 (2d Cir. 2017); *see also Doe 1 v. Gov't of United States Virgin Islands*, 771 F. Supp. 3d 379, 393 (S.D.N.Y. 2025) (allegations that defendants "received money from Epstein that they knew was sent from his New York bank account" and "communicated with Epstein about the payments while he was in New York" did not establish personal jurisdiction).

***Contacts of Unnamed Entities.*** Finally, Plaintiff alleges that FirstBank maintained bank accounts and processed transactions for unidentified individuals and entities with ties to New York. Compl. ¶ 14(e). This gets a basic principle of personal jurisdiction backward. It is FirstBank's minimum contacts—not a third party's—that matter. *Walden v. Fiore*, 571 U.S. 277,

---

[4] This failure is compounded by the fact that this is a class action. S*ee Vasquez*, 477 F. Supp. 3d at 255–56 ("In an action brought as a class action, personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named plaintiffs' causes of action. . . . [B]ecause the same contacts must give rise both to jurisdiction and to plaintiffs' claims, the Court considers only Garcia and Vasquez's three transfers . . . in evaluating personal jurisdiction.").

285 (2014) (court must "look[] to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there.").[5]

## II.    The Complaint Fails to State a TVPA Participation Claim (Count I)

Plaintiff alleges TVPA participation liability under 18 U.S.C. § 1591(a)(2) and 1595(a). To state a claim under the statute, plaintiff must allege that the defendant: (1) "participated in a commercial sex trafficking venture," (2) "knew or should have known that the venture either involved the perpetrator's use of force, the threat of force, fraud, or coercion to cause the victims to participate in sex or that the venture involved sex with victims who were under the age of 18," and (3) "benefited from its participation in the venture." *Bank of Am.,* 819 F. Supp. 3d 314, 327. The Complaint does not establish any of the three elements.

### A.    The Complaint Does Not Plausibly Allege Active Participation

"Participation, for purposes of a claim under Section 1595(a), requires allegations of 'specific conduct that furthered the sex trafficking venture,' that is, allegations of conduct that amounts to 'more than just passive facilitation' and, instead, reaches 'some level of active engagement.'" *Id.* (quoting *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 405 (S.D.N.Y. 2023) ("*Deutsche Bank*")). In the banking context, "'active engagement' requires a financial institution to provide more than its usual routine services." *Id.* Accordingly, "association alone" does not suffice. *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). Nor does

---

[5] In addition to lacking personal jurisdiction, SDNY is not the right venue. Fed. R. Civ. P. 12(b)(3). Plaintiff asserts that a substantial part of the relevant acts and omissions took place in this District, Compl. ¶ 13, but her own allegations point elsewhere. FirstBank opened and maintained Epstein's accounts in the United States Virgin Islands, conducted KYC and AML review there, and the relevant documents, employees, and offices are all there or in Puerto Rico. Compl. ¶¶ 21, 60–62, 77, 156, 207, 215, 230, 232, 237. Because the relevant conduct occurred outside New York, the case should be dismissed or transferred to the District Court of the U.S. Virgin Islands. *Totilo v. Herbert*, 538 F. Supp. 2d 638, 641 (S.D.N.Y. 2008) (transferring case to the district of the bank's headquarters and principal place of business for practical efficiency and because plaintiff was just one of many similarly situated individuals injured in an identical way by the bank's alleged failure).

merely "turning a blind eye to trafficking that may occur." *Doe v. Grindr Inc.*, 128 F.4th 1148, 1155 (9th Cir. 2025).

The Complaint describes only routine banking services that do not rise to the level of active participation. It does not describe any communications between any FirstBank employee and Epstein or Jane Doe—let alone meetings, visits to his properties, or receipt of information from victims. Nor does it claim that FirstBank played a role in directing Epstein's transactions, or advised him on his finances. The Complaint's 319 paragraphs contain a litany of allegations about other entities and individuals but nothing to suggest anything more than a standard banking relationship with FirstBank.[6]

Plaintiff does not allege that FirstBank disguised transactions, concealed counterparties, broke transfers into smaller amounts, or anything of the like—only that FirstBank processed customer-directed transfers, withdrawals, and engaged in other routine account activity. *See, e.g.*, Compl. ¶¶ 62, 129, 200, 208, 220, 235–36. That is precisely the distinction this Court has previously drawn between active participation and ordinary banking services. *See Bank of Am.*, 819 F. Supp. 3d at 329 (dismissing claims against BNY and noting absence of allegations that any employee "played any role in structuring Epstein-related accounts or transfers.").

The Complaint's allegations regarding due diligence, monitoring, and SAR filings do not amount to active participation. *See, e.g.*, Compl. ¶¶ 7, 129, 222, 229, 269–70. This Court has explained that alleged delays in filing SARs and alleged failures to conduct adequate due diligence support an inference of participation where that conduct occurred alongside additional allegations

---

[6] In *Deutsche Bank*, this Court sustained claims at the pleading stage based on allegations that one bank "assisted with 'structuring' cash withdrawals so that those withdrawals would not appear suspicious" and that another bank "'structured' 97 cash withdrawals by Epstein's co-conspirators . . . to avoid alerting authorities." 671 F. Supp. 3d at 405–06. Despite access to 3.5 million pages of documents through the DOJ's database, and years to develop their case against FirstBank, there is no allegation of that here.

that a financial institution "actively 'structured' Epstein-related transactions to keep them from appearing suspicious." *Bank of Am.,* 819 F. Supp. 3d at 330. By themselves, allegations of inadequate due diligence, monitoring and filing, amount to "passive nonfeasance," which is not actionable. *Id.* at 329–30.

The Complaint also fails to allege specially tailored or extraordinary services that might establish participation.[7] At most, Plaintiff provides conclusory allegations that Epstein received an undefined "preferred customer" designation, had certain routine fees waived, and opened accounts. Compl. ¶¶ 145, 201–06, 231–32, 236.[8] Those allegations describe ordinary customer service—not extraordinary or specially tailored assistance. The absence of even a single employee at FirstBank alleged to have any sort of relationship with Epstein, let alone contemporaneous knowledge of trafficking, underscores that Plaintiff's theory rests entirely on hindsight efforts to recast ordinary banking activity as active participation in sex trafficking.

The fact that Epstein unilaterally listed FirstBank as a reference on his own banking license application does not change the analysis. *See* Compl. ¶¶ 8, 81, 231–32. Plaintiff does not allege that FirstBank even knew Epstein listed it as a reference—let alone that FirstBank affirmatively

---

[7] In *Deutsche Bank*, 671 F. Supp. 3d at 406, the Court relied on allegations that a JPMorgan affiliate "actually trafficked women and girls" on a company aircraft. There were also allegations Deutsche Bank ignored oversight measures imposed by its own risk committee, facilitated transfers to known co-conspirators, and provided Epstein $200,000 per year in cash through services characterized as "far from routine." *Deutsche Bank*, 671 F. Supp. 3d at 405–406. Likewise, a claim against Bank of America survived because it allegedly provided direct banking services to a trafficking victim despite having "every reason to know that [the victim] had no ability to earn legitimate income in the United States" and serviced MC2—a modeling agency used to recruit victims—despite "suspicious and non-routine" circumstances. *Bank of Am.*, 819 F. Supp. 3d at 328. The Complaint alleges nothing comparable.

[8] The document cited by Plaintiff, EFTA01268689, as a basis for the "preferred customer" allegations shows that status was based simply on a rote application of the bank's policies that waived account service and wire transfer fees on accounts with sufficient history and combined balances—not some non-routine relationship. *See* EFTA01268689 at 28. Any FirstBank customer with similar balances would have automatically received the same routine treatment.

10

did anything to vouch for Epstein.[9] Nor is there any plausible allegation that Epstein's proposed

private banking institution was connected to trafficking. *See Geiss v. Weinstein Co. Holdings LLC*,

383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) ("The participation giving rise to the benefit must be

participation *in a sex-trafficking venture*, not participation in other activities engaged in by the sex

traffickers that do not further the sex-trafficking aspect of their venture") (emphasis in original);

*Noble*, 335 F. Supp. 3d at 524 (requiring allegations that "link" the defendant's conduct to the

plaintiff's trafficking).

Unable to allege participation through any kind of direct or active engagement, Plaintiff

largely repackages the same theory this Court has previously rejected—that processing allegedly

suspicious transactions, by itself, constitutes participation. *Bank of Am.*, 819 F. Supp. 3d at 328

(allegation that bank "processed hundreds of millions of dollars in wire transfers on behalf of,

Epstein and his associates," without more, was not "sufficient to allege that these were non-routine

services.").

The bulk of the challenged transactions here involve transfers among alleged Epstein-

related accounts. *See* Compl. ¶¶ 208–19, 230(a). This does not establish participation. *Bank of Am.*,

819 F. Supp. 3d at 328–29 (transfers "*between* Epstein-related accounts" do not establish

participation absent non-conclusory allegations that the transfers "furthered Epstein's sex

trafficking venture or were other than routine and essentially automatic.") (emphasis in original).[10]

---

[9] The document listed in the article that Plaintiff cites as a basis for this allegation, Compl. ¶ 231, n.101, EFTA02808332, shows simply that Epstein unilaterally listed "First Bank" as a bank reference on a questionnaire. Nothing more.

[10] Plaintiff also highlights certain donations to "Icahn School of Medicine at Mount Sinai" and "the Stockholm School of Economics." *See* Compl. ¶ 230(b). Plaintiff offers the conclusory allegation that these donations by Epstein were "fake." But to FirstBank these were simply charitable donations. The Complaint provides no explanation of how these transactions facilitated trafficking or allegations that FirstBank disguised the transfers, advised Epstein regarding them, or took any action beyond routine processing of facially charitable transactions.

Plaintiff's reliance on alleged payments to victims and their family members is misplaced. *See* Compl. ¶ 230(c). This Court has previously found that transfers to alleged victims do not establish participation absent allegations that the bank processed the transactions in a "non-routine fashion" or knew they "would assist, support, or facilitate sex trafficking." *Bank of Am.*, 819 F. Supp. 3d at 329. Plaintiff alleges neither here.

Plaintiff's allegations concerning transfers to FirstBank customers Ann M. Rodriguez and Cecile de Jongh fare no better. Compl. ¶¶ 230(d)-(e). The Complaint does not allege that either recipient was a trafficking victim, recruiter, co-conspirator, or participant in any alleged trafficking venture. Nor does it allege facts suggesting that either transfer was processed in a non-routine way, funded trafficking activity, or otherwise furthered the alleged venture. At most, Plaintiff alleges the transfers should have been viewed as suspicious because they involved round-dollar amounts. These transfers, like the rest of Plaintiff's allegations, are insufficient to establish active participation.

### B.    The Complaint Does Not Plausibly Allege Knowledge

FirstBank recognizes that this Court has held that the TVPA's knowledge requirement requires only that the bank "should have known" in the usual sense of negligence, *Bank of Am.*, 819 F. Supp. 3d at 330, and that Plaintiff need not allege knowledge specific to any particular victim. *Id*. FirstBank respectfully disagrees. *See S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (rejecting application of plain negligence standard); *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021) ("[T]he venture in which the defendant participated and from which it knowingly benefited must have violated the TVPRA as to the plaintiff.").

Irrespective of the standard applied, however, the Complaint does not adequately plead facts demonstrating knowledge under the statute. Unlike in prior complaints that survived dismissal, Plaintiff does not identify any FirstBank employee who allegedly possessed personal

12

knowledge of trafficking activity, communicated directly with a trafficking victim, or otherwise acquired first-hand information concerning the venture. *Cf. Deutsche Bank*, 671 F. Supp. 3d at 407–08 (describing bank personnels' imputable personal knowledge); *Bank of Am.*, 819 F. Supp. 3d at 331 (same).

Nor are there allegations of the same sorts of "red flags" that supported a finding of knowledge in prior cases. For example, in *Bank of America*, among other flags, "an impecunious young" woman without means had an account with the bank through which "large transfers passed." *Id*. at 331. There are no allegations of that here. Instead, the accounts identified in the Complaint are held by business entities whose account activity would not have generated red flags. *E.g.* Compl. ¶ 201 (transportation company); ¶ 202 (science foundation); ¶ 203 (aviation companies); ¶ 204 (real estate holding companies); ¶¶ 209–10 (additional real estate related entities); ¶ 211 (charitable accounts used to make donations to established charities). Nothing in the Complaint plausibly alleges facts about these accounts or their operations sufficient to raise red flags at the time.[11]

Instead of contemporaneous personal knowledge and red flags, the Complaint relies on impermissible hindsight. Plaintiff of improperly reconstructs FirstBank's alleged knowledge by referencing later-developed connections, new information, post-2019 governmental investigations, congressional reports, subsequent regulatory actions, and retrospective

---

[11] Plaintiff relies heavily on the allegation that these accounts were kept open after Epstein's arrest. *E.g.* Compl. ¶¶ 223–225. From this Plaintiff draws the incorrect inference that FirstBank "was always there for Jeffrey Epstein no matter how many other banks terminated him." *Id*. ¶ 224. The truth, as evidenced by court records and public documents, which the Court may take judicial notice of, is that FirstBank had legitimate reason for keeping accounts open including compliance with criminal activity liens and account freezes by law enforcement. *See, e.g.,* EFTA00087286 at 1 (February 11, 2020, filing in USVI Superior Court noting that government placed criminal activity liens "on accounts at the First Bank of Puerto Rico on January 31, 2020").

commentary regarding Epstein. *E.g.* Compl. ¶¶ 52–58, 61, 167. The relevant inquiry is not what investigations have revealed years later—but what facts were known to FirstBank at the time.

Plaintiff's allegations also presuppose that if an event happened on a given date, it was immediately knowable to FirstBank. Not so. Plaintiff references numerous records and articles that may be relatively easy to find today using digitized records, well indexed databases, and modern search engines but were not necessarily accessible at the time. For example, Plaintiff alleges that a "2003 Vanity Fair article . . . was readily available to any FirstBank compliance officer performing routine due diligence," but only select content was published online at that time and there is no factual basis to assert that any FirstBank employee saw or had access to that article at the time. Compl. ¶ 73.

The only remaining basis for inferring knowledge sufficient to support TVPA liability is the existence of public reporting surrounding Epstein in the years prior to his 2019 arrest. This is insufficient. Even if the articles Plaintiff cites might support "general awareness of sexual misconduct" in the past, that is "insufficient to establish the more specific awareness of sex trafficking that is required for a TVPA violation." *Villalobos v. Telemundo Network Grp. LLC*, 2025 WL 2687948, at *4 (S.D.N.Y. Sept. 19, 2025). Indeed, the many articles Plaintiff cites are about past, not ongoing, activity. *E.g.* Compl. at ¶ 207, n.76 (citing 2014 article about 2007 allegations of misconduct); Compl. at ¶ 119, n.52 (detailing claims that were addressed in 2008).

### C.    The Complaint Does Not Plausibly Allege that FirstBank Benefited from Participation in a Trafficking Venture

FirstBank recognizes that this Court has held that the TVPA does not require allegations of a "causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit," and that "allegations that the bank knowingly received revenue from its participation in generally assisting a venture that it knew, or should have known, involved sex

14

trafficking" satisfy the TVPA's benefit requirement. *Bank of Am.*, 819 F. Supp. 3d at 332. FirstBank respectfully disagrees that this is the correct standard. *See Does 1–6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) (quoting *Geiss*, 383 F. Supp. 3d at 169) (TVPA benefit element requires "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit.").

But the Complaint fails to adequately allege a benefit under either standard. Plaintiff's assertion that the bank benefited via fees generated from Epstein's accounts is the kind of standard revenue that courts have consistently held is insufficient to satisfy the benefit requirement.[12] Moreover, the allegation that FirstBank benefited via fees, Compl. ¶¶ 9, 83, 252–53, sits uncomfortably next to Plaintiff's allegation that the bank "waived account service charge fees and wire transfer fees for all of [Epstein's] accounts." Compl. ¶ 236. Plaintiff's conclusory allegation that the bank benefited from "connections" and "referrals" falls equally flat. Compl. ¶ 253. Despite having access to thousands of documents and years to investigate, Plaintiff does not identify even a single connection or customer FirstBank supposedly gained via Epstein.

## III.    The Complaint Fails to State a TVPA Obstruction Claim (Count II)

To state an obstruction claim, Plaintiff must plausibly allege that FirstBank (1) knew of an effort to enforce the TVPA and (2) intentionally obstructed or attempted to obstruct that enforcement effort. *See United States v. Farah*, 766 F.3d 599, 612 (6th Cir. 2014); *Deutsche Bank*, 671 F. Supp. 3d at 409; *see also Bank of Am.*, 819 F. Supp. 3d at 334. The Complaint does neither.

---

[12] *Doe v. Grindr Inc.*, 128 F.4th at 1155–56 (Grindr's receipt of advertising revenues without causal connection to alleged sex trafficking did not satisfy TPA benefit requirement); *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 679 (S.D.N.Y. 2024) (complaint against college failed to plausibly allege that the college "would not have received those payments in the absence of the alleged sex or labor trafficking"); *Geiss*, 383 F. Supp. 3d at 169–170 (complaint against Weinstein Company dismissed for not plausibly alleging revenues from Harvey Weinstein's movies provided because of Weinstein's sexual misconduct).

The only enforcement effort that could have been obstructed here is the Southern District of New York ("SDNY") investigation that resulted in Epstein's July 2019 indictment and arrest. *See Bank of Am.*, 819 F. Supp. 3d at 335 (earlier investigations that resulted in Epstein's 2006 guilty plea cannot support a claim for obstruction because § 1591(d) was enacted in 2008 and did not have retroactive effect). The Complaint's own allegations negate any plausible inference of intentional obstruction of that investigation. Epstein was arrested on July 8, 2019. Compl. ¶ 290. Plaintiff alleges that FirstBank filed a SAR on July 19, 2019, just *eleven days* later, noting $1,740,000 in suspicious transactions. Compl. ¶ 222.

In dismissing a materially identical obstruction claim against BNY, the Court found that the allegation that BNY filed a SAR on August 8, 2019—"barely a month after Epstein's arrest"—was "inconsistent with the theory that BNY acted to intentionally obstruct the investigation of TVPA violations being conducted in the Southern District of New York even after that investigation became known." *Bank of Am.*, 819 F. Supp. 3d at 335. If a SAR filing one month after arrest negated an inference of intentional obstruction, a filing 11 days after should be dispositive.

The obstruction claim is further undermined by Plaintiff's selective citation to public documents in the DOJ database. For example, the list of Epstein related accounts that are cut and paste into the Complaint at ¶ 4 comes from a FirstBank letter that demonstrates the bank's compliance with a law enforcement subpoena. *See* EFTA01252357 (FirstBank letter, cited in footnote 5 of the Complaint, providing a list of accounts to law enforcement in "compliance with [a] Subpoena received" from SDNY).[13]

---

[13] Other public record documents contained in the DOJ database confirm FirstBank's regular compliance with law enforcement investigations via response to subpoenas. *See, e.g.*, EFTA01273238 (April 15, 2020, cover letter transmitting FirstBank production in response to Epstein-related SDNY subpoena).

The Complaint's remaining allegations of obstruction consist entirely of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.[14] These are precisely the type of conclusory, formulaic recitations that *Iqbal* instructs courts to disregard. *See* 556 U.S. at 678. The Complaint does not allege the sorts of facts that might substantiate an obstruction claim. For example, it does not allege that any specific FirstBank employee withheld information from investigators. Or made any misleading or incomplete statements to law enforcement in which FirstBank concealed or misrepresented information. And it does not identify any specific act or decision taken after the SDNY investigation became public that supposedly obstructed it.[15]

At bottom, the Complaint alleges that knowing everything we do now, FirstBank should have done more to prevent Epstein's crimes. But obstruction cannot be pled in hindsight. An obstruction claim requires knowing interference with a law enforcement investigation. Here, there are no facts suggesting anyone at FirstBank was even aware of an effort to enforce the TVPA from 2008 to Epstein's 2019 arrest. And no allegation that, once it became aware, the bank did anything other than aid the investigation by filing a SAR and responding to subpoenas. Thus, Count II must be dismissed.

---

[14] The Complaint asserts that FirstBank "knowingly and intentionally obstructed, attempted to obstruct, interfered with, and prevented the enforcement of 18 U.S.C. §§ 1591(a)(1) and (a)(2)." Compl. ¶ 288. It alleges that FirstBank's failure to timely file SARs "was wrongful and purposeful." Compl. ¶ 295. And it asserts that "FirstBank's obstruction . . . was intentional and willful." Compl. ¶ 300.

[15] This stands in contrast to the allegations this Court found sufficient to sustain obstruction claims in other cases. In *Bank of Am.*, the amended complaint "clearly contain[ed] allegations" that the bank "'intentionally' and 'deliberately' failed to timely file SARs, including in and after 2019," supported by specific factual allegations of a named bank employee with direct personal knowledge of Epstein's crimes, documentary evidence showing internal awareness of the risks, and a detailed pattern of deliberate delay in SAR filings tied to the bank's desire to retain Epstein's business. *See Bank of Am.*, 819 F. Supp. 3d at 322–24, 335. Similarly, in *Deutsche Bank*, the complaint alleged that specific bank employees had direct knowledge of ongoing investigations and that the banks had actively structured accounts and transactions to help Epstein evade detection. *See Deutsche Bank*, 671 F. Supp. 3d at 409. There are no such allegations here.

17

Additionally, FirstBank respectfully submits, recognizing that this Court has previously rejected the argument, that dismissal of this Count is warranted because § 1595 does not provide a private right of action for alleged violations of § 1591(d). *See Doe v. Fitzgerald*, 2022 WL 425016, at *4 (C.D. Cal. Jan. 6, 2022); *Gilbert v. U.S. Olympic Comm*., 423 F. Supp. 3d 1112, 1143 (D. Colo. 2019); *Watkins v. First Citizens Bank & Tr. Co., Inc*., 2017 WL 4857959, at *2 (D.S.C. Oct. 2, 2017).

IV.    **The Complaint Fails to State a Claim Under the Gender-Motivated Violence Protection Act (Count III)**

Count III advances a novel claim that would convert a local New York City ordinance into a virtually limitless private right of action with global reach. The GMVA prohibits enabling, participating in, and conspiring in "the commission of crimes of violence motivated by gender" that occurred within the five boroughs of New York City. Compl. ¶ 314; N.Y.C. Admin. Code §§ 10-1101–1107. Plaintiff's attempt to use this as a springboard to reach routine banking services conducted 1,500 miles away should be rejected for at least four reasons: (1) the Complaint does not plausibly allege predicate crimes against Doe in New York City; (2) the GMVA's revival and lookback mechanisms are preempted by New York State law; (3) FirstBank's alleged conduct does not meet the statutory requirements for "enabling," or any other form of, liability under the GMVA; and (4) imposing liability on FirstBank for conduct that predated the creation of secondary liability under the ordinance, and the creation of the GMVA itself, violates due process.

A.    **The GMVA Does Not Apply to FirstBank's Out-of-State Conduct**

The GMVA is a New York City municipal ordinance, as such it provides a cause of action for misconduct that occurred in New York City. *See, e.g., Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324–25 (N.Y. Ct. App. 2002) (for New York statute to apply, "transaction in which the consumer is deceived must occur in New York," to hold otherwise "would lead to an

18

unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application" of New York law).

Courts in this District have applied a territorial limitation to the GMVA, holding that it "applies only to conduct occurring in New York City." *Bensky v. Indyke*, 743 F. Supp. 3d 586, 602 (S.D.N.Y. 2024) (focusing on where the defendant's enabling conduct occurred); *see also Kelly v. Combs*, 2025 WL 2978058, at *2 (S.D.N.Y. Oct. 22, 2025) (citing N.Y.C. Admin. Code § 2-201). In *Doe 3 v. Indyke*, this District held that the plaintiff could only seek damages related to abuse that occurred in New York, adopting the formulation of the GMVA applied in *Bensky*. *Doe 3 v. Indyke*, 801 F. Supp. 3d 200, 208 (S.D.N.Y. 2025).

FirstBank is headquartered in San Juan, Puerto Rico, and its alleged conduct here— maintaining accounts, processing wire transfers, and performing compliance functions—occurred in Puerto Rico and the U.S. Virgin Islands. Compl. ¶¶ 21–22, 60. The Complaint does not allege that FirstBank has sufficient contacts to be subject to personal jurisdiction in New York—let alone that it performed any of the allegedly culpable acts within New York City. *See supra* § I. Indeed, the Complaint does not identify a single FirstBank officer, employee, or agent who was even located in New York City. Therefore, the GMVA does not apply.[16]

Stretching a local New York City ordinance to regulate FirstBank's conduct in Puerto Rico and the USVI would scramble banking oversight and regulatory frameworks that are carefully delineated between local, state, and federal governments. It would also violate first principles that generally tie the application of laws to specific geographic areas including the dormant Commerce Clause. *See Freedom Holdings Inc. v. Spitzer*, 357 F.3d 205, 219 (2d Cir. 2004) ("state statute will

---

[16] The alleged use of correspondent banking relationships with New York-based institutions or passage of wires through New York does not circumvent this geographical limitation. Courts have repeatedly rejected attempts to establish jurisdiction based on the incidental passage of funds through New York correspondent accounts. *See Berdeaux*, 561 F. Supp. 3d at 403–04.

be invalid *per se* under the Commerce Clause if it has the practical effect of controlling commerce occurring wholly entirely outside that State's borders."); *see also Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989) ("[T]he 'Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State.'").

    **B.**    **New York Law Preempts the GMVA's Revival and Lookback Mechanisms**

Count III must be dismissed because the GMVA's revival mechanism is preempted by conflicting New York State law: the Adult Survivors Act ("ASA") and the Child Victims Act ("CVA"). The New York State Legislature, via the CVA and then the ASA, created revival windows to permit child and adult victims of sexual offenses to file otherwise time-barred civil claims. *Parker v. Alexander*, 779 F. Supp. 3d 361, 366–67 (S.D.N.Y. 2025), *appeal pending*, No. 25-487 (2d Cir. 2026), *certified question transmitted* (Mar. 23, 2026) (citing N.Y. Const., art. IX, § 2(c)(10), for the home rule provision that "authorizes municipalities to adopt local laws in certain fields so long as they are 'not inconsistent' with the Constitution or general state laws.").

The court in *Parker* held that the GMVA's revival window was preempted because it conflicts with the comprehensive scheme the State Legislature established through the ASA, which created a one-year window running from November 24, 2022, to November 24, 2023. 779 F. Supp. at 366–68; *see also Bellino v. Tallarico*, 2024 WL 1344075, at *1 (S.D.N.Y. Feb. 21, 2024) (same). The CVA's revival period opened August 14, 2019, and closed August 14, 2021. The court in *Parker* reasoned that GMVA's creation of a longer revival window conflicts with the Legislature's deliberate policy choice for a more limited window under the ASA. *Parker*, 779 F. Supp. at 368–69. The Court also held that the CVA and ASA "[c]ollectively . . . apply to all civil claims by child and adult victims for personal injuries arising from conduct constituting sexual offenses," "provide

exact time frames during which claims may be brought," and "therefore occupy the field of revival of civil claims arising from violations of state sexual offense penal statutes." *Id.* at 367.

Here, the Complaint alleges predicate offenses under N.Y. Penal Law Article 130. Compl. ¶ 312. Plaintiff's claim falls squarely within the category of sexual-offense claims governed by the ASA and CVA, whose revival windows have long been closed. Under *Parker*, the GMVA's revival of time-barred claims based on Article 130 predicates is preempted and Count III must be dismissed.

### C.    Plaintiff Does Not Plausibly Allege GMVA Liability

Even if not preempted, to state a claim, the Complaint must adequately allege that FirstBank committed, directed, enabled, participated in, or conspired in the commission of a crime of violence motivated by gender. It does not. Though the Complaint recites the bare elements of a violation by alleging that FirstBank "'enable[d]' and 'participate[d] in', and on information and belief 'conspire[d] in'" gender motivated violence, it does not actually plead facts sufficient to state a claim. Compl. ¶ 314.

Because the terms "enable," "participate," and "conspire" are undefined in the ordinance or through a body of developed caselaw, courts must import standards from other common law and statutory regimes where secondary liability on financial institutions is imposed. In the analogous context of aiding and abetting liability, courts require plaintiffs alleging secondary liability based on "participation" to show that banks had "actual knowledge" of the underlying fraud and provided "substantial assistance." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294–95 (2d Cir. 2006). The requirement of "actual knowledge" means that general suspicions about the underlying misconduct is insufficient. *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246–47 (S.D.N.Y. 1996). And the "substantial assistance" requirement has been interpreted to require a showing that the bank's alleged misconduct was a proximate cause of the underlying crime. *SPV*

*Osus Ltd. v. UBS AG*, 882 F.3d 333, 345–46 (2d Cir. 2018) (substantial assistance requires proximate causation, not attenuated but-for causation).

These requirements together mean that allegations based on the regular provision of banking services are insufficient to support secondary liability. *In re Agape Litig.*, 681 F. Supp. 2d 352, 365–66 (E.D.N.Y. 2010) (holding that conventional banking services do not constitute substantial assistance to fraudulent schemes); *see Rosner v. Bank of China*, 528 F. Supp. 2d 419, 427 (S.D.N.Y. 2007) ("the 'mere fact that participants in a fraudulent scheme use accounts at a bank to perpetrate it, without more, does not in and of itself rise to the level of substantial assistance'").

As discussed above, the secondary liability regime under the TVPA similarly requires "more than just passive facilitation and, instead, reaches 'some level of active engagement.'" *Bank of Am.*, 819 F. Supp. 3d at 327. Active engagement "requires a financial institution to provide more than its usual routine services." *Id*. As "anything less would impose an almost impossible burden on banks in connection with the huge volume of routine services they daily provide on a computerized basis." *Id*.

In addition to meeting these standards, the text of the GMVA further requires Plaintiff to show that the alleged misconduct proximately caused injury to Jane Doe *specifically*. The law's text creates a cause of action for an individual who is "injured by a party who . . . enables . . . the commission of a crime of violence motivated by gender." N.Y.C. Admin. Code § 10-1104. This requires a traceable connection between the defendant's conduct and the specific crimes against the plaintiff—not merely that the defendant's services generally supported a broader operation in which the plaintiff was victimized.

22

Applying these principles to the largely uncharted waters of GMVA secondary liability shows that Plaintiff has failed to state a claim under the ordinance. The Complaint alleges account openings, wire transfers, cash withdrawals, and SAR filing failures. Compl. ¶¶ 249, 283, 314, 316. But it fails to allege that any FirstBank employee was present at Epstein's properties, personally interacted with victims, participated in any act of abuse, or had actual knowledge of the same. Nor does the Complaint allege "active engagement" in misconduct by structuring transactions or providing financial advice. The Complaint is even weaker when it comes to establishing a causal nexus between FirstBank and abuse of Jane Doe specifically. It does not identify any FirstBank action directed toward Plaintiff, any communication or interaction with Plaintiff, or any conduct that directly facilitated specific injury to Plaintiff. The causal chain Plaintiff proposes is simply too attenuated to allege liability under the ordinance.[17]

### D.    The 2026 GMVA Amendment Violates Due Process

Even if Plaintiff had adequately pled a claim, Count III should be dismissed because the 2026 amendment of the GMVA, which purportedly imposes liability for an unlimited lookback period that predates both the creation of secondary liability under the ordinance and the GMVA itself, violates due process.

The original enactment of the GMVA in 2000 reached only direct perpetrators of gender-motivated violence. *See* Local Law 73/2000 § 1, eff. Dec. 19, 2000. In 2022, it was amended to impose secondary liability on those who commit, direct, enable, participate in, or conspire in the commission of a crime of violence motivated by gender. N.Y.C. Admin. Code § 10-1104. The

---

[17] The *Bensky v. Indyke* case provides an instructive comparison. There, the court allowed a common-law aiding-and-abetting battery claim to proceed against Epstein's lawyer and accountant because the defendants allegedly "got the cash and paid the victims, kept the books," managed Epstein's companies, dealt with settlements, remained in direct contact with Epstein, and were "at the houses and on the plane." 743 F. Supp. 3d at 598. The *Bensky* defendants were not passive providers of routine services; they were alleged to be integral participants in Epstein's day-to-day operations who personally interacted with victims and managed the mechanics of the abuse.

GMVA was amended once again in 2026 in an attempt to impose civil liability for conduct that occurred before the GMVA even existed, and decades before the 2022 amendment created secondary liability. *Id.* § 10-1104.1. This violates due process.

The Supreme Court has recognized that "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). Under *Landgraf*, a statute has impermissible retroactive effect if it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280. A retroactive statute that "attaches a new disability, in respect to transactions or considerations already past" is "quintessentially backward looking" and raises serious constitutional concerns. *Id.* at 269, 282–83. Here, a statute purports to attach civil liability to conduct that predates the statutory scheme creating such liability raising due process issues.

The Supreme Court has distinguished between potentially permissible legislation that merely "upsets expectations based in prior law" and legislation that "attaches new legal consequences to events completed before its enactment," which triggers heightened constitutional scrutiny. *Id*. at 269–70. The *Landgraf* Court expressly held that "[t]he introduction of a right to compensatory damages" where none previously existed "would attach an important new legal burden" because such damages are "quintessentially backward looking." *Id.* at 282–83. The same analysis applies here: the 2022 and 2026 amendments do not merely extend a filing window for an existing cause of action—the 2022 amendment created an entirely new category of secondary liability that did not exist when FirstBank's alleged conduct occurred. *See Doe v. Combs*, 2024 WL 4987044, at *3 (S.D.N.Y. Dec. 5, 2024). And the 2026 amendment attempts to retroactively

24

apply this liability to conduct that occurred before the 2022 amendment and even before the law's original enactment in 2000. N.Y.C. Admin. Code § 10-1104.1.

FirstBank's alleged conduct occurred between 1998 and 2019, and allegedly impacted Plaintiff from 2011 through 2019. Compl. ¶¶ 1, 160–61.[18] During this entire period, there was no secondary liability under the GMVA. FirstBank could not have "conformed [its] conduct" to a statute that did not yet apply. *Landgraf*, 511 U.S. at 265. The seemingly limitless expansion of retroactive liability for acts that allegedly occurred before the 2022 amendment, and the GMVA itself, violates due process and requires dismissal. *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992).

## CONCLUSION

For these reasons, Defendants FirstBank Puerto Rico and First BanCorp respectfully request that this Court dismiss the Complaint in its entirety with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: July 30, 2026

Respectfully submitted,

*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth (*pro hac vice*)
Andy O'Laughlin (*pro hac vice*)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
(t) (617) 526-6000
(f) (617) 526-5000
felicia.ellsworth@wilmerhale.com
andy.olaughlin@wilmerhale.com

---

[18] It is unclear whether Plaintiff is pursuing injunctive relief against FirstBank, as the Complaint does not mention injunctive relief in the Request for Relief section, but does mention it within Count III. *Compare* Compl. ¶ 319 *with* Compl. at pg. 89–90. Plaintiff has failed to allege facts sufficient to justify injunctive relief. Indeed, it is unclear what there is to enjoin and the allegations in the Complaint facially contradict any assertion that there is an immediate risk of future harm given Epstein's death and the fact that Plaintiff's alleged trafficking ended years ago.

25

Boyd M. Johnson III
Christopher Bouchoux
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
boyd.johnson@wilmerhale.com
christopher.bouchoux@wilmerhale.com

Robert J. Burns
Stosh M. Silivos
Isabel D. Knott
**HOLLAND & KNIGHT LLP**
787 Seventh Avenue, 31st Floor
New York, NY 10019
(t) 212-513-3200
(f) 212-385-9010
robert.burns@hklaw.com
stosh.silivos@hklaw.com
Isabel.knott@hklaw.com

Alex M. Gonzalez (*pro hac vice*)
Israel J. Encinosa (*pro hac vice*)
Barbara A. Martinez (*pro hac vice*)
**HOLLAND & KNIGHT LLP**
701 Brickell Avenue
Suite 3300
Miami, FL 33131
(t) 305-374-8500
(f) 305-789-7598
alex.gonzalez@hklaw.com
israel.encinosa@hklaw.com
barbara.martinez@hklaw.com

*Counsel for Defendants FirstBank Puerto Rico
and First BanCorp*

26

## CERTIFICATE OF COMPLIANCE

I, Felicia H. Ellsworth, hereby certify pursuant to Local Civil Rule 7.1(c) that the

foregoing memorandum of law was prepared using Microsoft Word and complies with Rule 2(e)

of this Court's Individual Rules and Local Civil Rule 7.1(c).


*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth

27