**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIRSTBANK PUERTO RICO and FIRST BANCORP,<br><br>Defendants. | Case No.: 26-cv-5327-JSR |

**FIRSTBANK PUERTO RICO AND FIRST BANCORP'S REPLY MEMORANDUM**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**


I. The Complaint Fails to State a TVPA Participation Claim (Count I) ........................... 1

A. The Complaint Does Not Plausibly Allege Participation ................................. 1

B. The Complaint Does Not Plausibly Allege Knowledge ................................... 4

C. The Complaint Does Not Plausibly Allege that FirstBank Benefited from Participation in a Trafficking Venture ............................................................... 6

II. The Complaint Fails to State a TVPA Obstruction Claim (Count II)........................... 7

III. The Complaint Fails to State a Claim Under the Gender-Motivated Violence Protection Act (Count III)........................................................................................ 8

CONCLUSION ........................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 7

*Barnum v. Millbrook Care Ltd. P'ship*,
850 F. Supp. 1227 (S.D.N.Y. 1994), *aff'd*, 43 F.3d 1458 (2d Cir. 1994) ........ 3

*Carroll v. Trump*,
650 F. Supp. 3d 213 (S.D.N.Y. 2023) ........ 9

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
671 F. Supp. 3d 387 (S.D.N.Y. 2023) ........ 4

*Doe v. Bank of Am., N.A.*,
819 F. Supp. 3d 314 (S.D.N.Y. 2026) ........ 1, 4, 7

*Doe v. Doe*,
213 N.Y.S.3d 875 (N.Y. Sup. Ct. 2024) ........ 9

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) ........ 6

*Logfret, Inc. v. Gerber Fin., Inc.*,
559 F. Supp. 3d 348 (S.D.N.Y. 2021) ........ 6

*M.H. v. S.A.*,
No. 531568/2023, 2025 WL 3034263 (N.Y. Sup. Ct. Oct. 29, 2025) ........ 8

*Mueller v. Deutsche Bank Aktiengesellschaft*,
2026 WL 2220472 (2d Cir. Aug. 3, 2026) ........ *passim*

*Mueller v. Deutsche Bank Aktiengesellschaft*,
777 F. Supp. 3d 329 (S.D.N.Y. 2025), *aff'd*, No. 25-1162, 2026 WL 2220472 (2d Cir. Aug. 3, 2026) ........ 3, 5

*S. H. v. Diocese of Brooklyn*,
167 N.Y.S.3d 171 (2022) ........ 8

*In re Zyprexa Prods. Liab. Litig.*,
2010 WL 2039010 (E.D.N.Y. May 19, 2010) ........ 9

**Statutes**

18 U.S.C. §§ 1591(a)(2), 1595(a) ........ 1

**Other Authorities**

N.Y.C. Admin. Code § 10-1104 ........ 8

N.Y. Stat. Law § 149 (McKinney 2026)........................................................................ 8

The Second Circuit released an opinion clarifying the standard for assessing TVPA participation liability against a financial institution 10 days before Plaintiff's Opposition brief was due. *See Mueller v. Deutsche Bank Aktiengesellschaft*, 2026 WL 2220472, at *5 (2d Cir. Aug. 3, 2026). One would expect Plaintiff's Opposition to have put forth its best argument as to how the Complaint states a claim under this now-controlling legal standard. It did not. Instead, Plaintiff makes only passing reference to *Mueller* in a one-paragraph attempt to distinguish it. Opp. at 17. Plaintiff tries to ignore the Second Circuit's test for alleging TVPA participation because the Complaint does not pass it. Applying it requires dismissal.

Similarly, rather than demonstrating how the Complaint states a TVPA obstruction claim under the framework this Court set out in *Doe v. Bank of Am., N.A.*, 819 F. Supp. 3d 314, 334 (S.D.N.Y. 2026) ("*Bank of Am.*"), the Opposition argues for the application of a different standard. Opp. at 20–21. The GMVA claim also falls short, as it stretches a New York City ordinance beyond its text, territory, and constitutional limits.

In addition to failing to state a claim, the Complaint should be dismissed for lack of personal jurisdiction as Plaintiff has failed to establish purposeful availment and cannot link FirstBank's limited contacts with New York to either the alleged misconduct or Plaintiff's specific injury.[1] For all these reasons, this Complaint should be dismissed.

## I. The Complaint Fails to State a TVPA Participation Claim (Count I)

### A. The Complaint Does Not Plausibly Allege Participation

As the Second Circuit has now made clear, to state a claim for participation liability under 18 U.S.C. §§ 1591(a)(2) and 1595(a), Plaintiff must allege facts showing that FirstBank actually "took part" in Epstein's criminal enterprise. *See Mueller* at *4–5. This requires, for example, allegations that FirstBank "owned an interest in the venture," acted with a "desire to

[1] On August 18, 2026, the Court ordered the parties to complete limited jurisdictional discovery and requested further briefing based on that discovery. Dkt. 47. In light of that order, FirstBank will reserve argument and address the issue of personal jurisdiction in its supplemental briefing that will be submitted on September 21, 2026.

promote the venture's success," had a "common purpose" with the trafficking, "exercised control over the venture's operations," or participated in a way that "went beyond a mere arm's-length transaction." *See id.* at *5. Plaintiff makes a halfhearted attempt to distinguish this binding precedent by incorrectly arguing that *Mueller* "did not involve sex trafficking allegations." Opp. at 17. It did. *See Mueller* Complaint at ¶¶ 64–84, 432–39 (laying out sex trafficking allegations).

Plaintiff helpfully distills the Complaint down to a list of ten supposed ways in which FirstBank "took part" in sex trafficking. Opp. at 13. Seven of the ten simply boil down to the maintenance of accounts and processing of transactions. Plaintiff alleges that FirstBank:

> (1) "opened accounts for known Epstein-related entities and agents";
> (2) "opened a work-release employment account";
> (3) "wired $10.9 million from a FirstBank account" to Ghislane Maxwell;
> (5) "provided Epstein with credit card services";
> (8) "processed transfers between numerous Epstein-related accounts";
> (9) "facilitated wire transfers";
> (10) used "correspondent banks in New York to send funds to victims abroad";

Opp. at 13. *Mueller* makes clear these allegations are insufficient to state a participation claim. The mere acts of "provid[ing] bank accounts to individuals associated with" the alleged venture, or "process[ing] transactions that enabled the scheme" fail to state a claim as they "establish little more than an arm's-length business relationship between a bank and its customers, as well as the routine provision of ordinary, nondifferentiated financial services." *Mueller* at *5.

That leaves only three allegations not categorically barred under *Mueller*. But even of those remaining allegations, none crosses the Second Circuit's dividing line from "passive [financial] service provider" to active "co-venturer." *Id.* None allege that FirstBank shared Epstein's purpose, exercised control over any aspect of his criminal conduct, helped recruit or transport victims, structured transactions to conceal trafficking, or provided advice to further the venture. They instead repackage ordinary account administration, alleged compliance

failures, and speculation about what FirstBank supposedly should have inferred. That is not participation under *Mueller*.

*First*, Plaintiff alleges that FirstBank "designated Epstein a 'Platinum Banking' client and waived fees" on his accounts. Opp. at 13. The document cited by Plaintiff as a basis for this allegation shows this was based on a routine application of the bank's policies. *See* EFTA01268689. Any FirstBank customer with similar balances and account history automatically received the same routine treatment.[2]

*Second*, Plaintiff alleges that FirstBank served as a "reference" for Epstein, implying the bank somehow vouched for him. Opp. at 13. The actual facts Plaintiff cites in support of this allegation, however, do not support that speculation. The document listed in the article on which Plaintiff relies shows simply that Epstein wrote "First Bank" as one of multiple banking references on a questionnaire. Compl. ¶ 231, n.101, EFTA02808332. Plaintiff does not allege that FirstBank knew Epstein had listed it as a reference—let alone that FirstBank vouched for him.[3]

*Third*, Plaintiff alleges that FirstBank "fail[ed] to timely file [] SARs." Opp. at 13. As this Court has noted, allegations that a bank "failed to timely file SARs" without any corresponding allegation of "active" structuring, amounts to, at most, "passive nonfeasance,"

---

[2] Indeed, far more serious allegations regarding fees have been deemed insufficient to allege participation. *Mueller v. Deutsche Bank Aktiengesellschaft*, 777 F. Supp. 3d 329, 339 (S.D.N.Y. 2025), *aff'd*, No. 25-1162, 2026 WL 2220472 (2d Cir. Aug. 3, 2026) (allegation that "Deutsche Bank charged higher fees to ISIS-connected customers because they were suspicious and high-risk … does not mean that the defendants were engaged in a shared enterprise."); *Mueller* at *6 (same).

[3] Lacking any substantive response to the point that Plaintiff's own documents do not show what they claim, Plaintiff argues these "are questions of fact inappropriate for resolution at this early stage of litigation." Opp. at 16. That is not true: "if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994), *aff'd*, 43 F.3d 1458 (2d Cir. 1994).

not the active participation required under the TVPA. *Bank of Am.*, 819 F. Supp. 3d at 329–30.[4]

In an attempt to distinguish *Mueller*, Plaintiffs argue that "[c]ritically, and unlike here, the allegations in *Mueller* did not involve the concealment of suspicious activity, such as the deliberate untimely filing of required SARs." Opp. at 17. That is incorrect. Plaintiffs in *Mueller* made the same allegation as Plaintiff here of delayed SAR filings. *See Mueller* Compl. at ¶ 217 ("Deutsche Bank's SARs filings were plainly untimely—and that untimely filing would have prevented U.S. law enforcement from taking appropriate measures to interdict the suspicious transactions."). Plaintiff's Opposition does not identify any FirstBank employee who is alleged to have structured transactions, coached Epstein on avoiding detection, or manipulated account activity to evade scrutiny. The absence of such allegations and Plaintiff's over-reliance on the alleged failure to file a SAR rather than identifying any affirmative action by FirstBank to "take part" in a sex trafficking venture is fatal, particularly after *Mueller*.

**B. The Complaint Does Not Plausibly Allege Knowledge**

Unburdened by citation, Plaintiff alleges that "FirstBank knew about Epstein's sex-trafficking venture." Opp. at 17. Yet Plaintiff does not identify a single FirstBank employee with knowledge, or even suspicions, of any sex trafficking venture.[5] Instead, the Opposition argues knowledge should be inferred based on (1) transactions with supposed "red flags" and (2) public news articles and documents from legal proceedings. Opp. at 17–19. Both grounds fail.

[4] The Opposition brief cites a report by Senator Wyden and claims that the report details "how bank executives 'coached Epstein on how to withdraw cash through shell companies instead of his personal accounts.'" Opp. at 15, n.12. To be clear, FirstBank is not mentioned anywhere in the Wyden report.

[5] This omission differentiates this case from prior ones where this Court has found allegations sufficient to impute knowledge under the TVPA. *Cf. Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 407–08 (S.D.N.Y. 2023) (describing bank personnels' imputable personal knowledge); *Bank of Am.*, 819 F. Supp. 3d at 331 (same).

The allegations of "red flags" are unconvincing. Citing to a document that the Complaint does not include or reference, Plaintiff suggests that FirstBank improperly opened an account in May 2018 "without [the accountholder's] physical presence in the USVI and at FirstBank at the time of opening." Opp. at 18. In fact, the cited document shows the opposite—FirstBank required physical presence to complete the transaction. *See* EFTA00541897 (Jeanne Brennnan Wiebracht writes in an email: "When [name omitted] is on Island she will need to go over to First Bank - Red Hook Branch and sign account opening document paper work. The bank requires this to be done as soon as possible but not longer than 30 days from the opening of the account. [Name omitted] will need to bring a copy of her social security card at this time."). Plaintiff does not explain how this transaction demonstrates that FirstBank knew about a secret criminal sex trafficking enterprise that was not exposed by law enforcement until July 2019—more than a year later.

Plaintiff's argument that FirstBank employees should have done what law enforcement did not fares no better. "[T]he TVPA [] does not require a company providing generally available services to investigate its customers to ensure they are not indirectly connected to trafficking." *Mueller*, 777 F. Supp. 3d at 339 (allegations that bank personnel "were aware or should have been aware of media reports about [alleged] trafficking and other crimes" are "inadequate" to satisfy the TVPA knowledge requirement). These allegations are insufficient to plead knowledge.

The TVPA requires knowledge tied to the trafficking venture—not a generalized awareness that a customer has a criminal history or reputational risk. Nor does the existence of Know Your Customer or Anti Money Laundering obligations transform alleged compliance shortcomings into TVPA knowledge. If that were enough, every alleged compliance shortcoming involving a customer later accused of trafficking would become a basis for imposing civil TVPA liability. *Mueller* forecloses that expansion.

### C. The Complaint Does Not Plausibly Allege that FirstBank Benefited from Participation in a Trafficking Venture

As FirstBank did not participate in Epstein's sex trafficking venture, or even know that it existed, it stands to reason that it also did not benefit from that venture. Plaintiff's Opposition advances two theories of benefit: (1) the receipt of service fees from Epstein-related accounts and (2) referrals and connections to high net-worth individuals. Neither survive scrutiny.

*First*, courts have consistently held that service fee revenue is insufficient to satisfy the benefit element of a TVPA claim. *See* Defs.' Memo. Supp. Mot. Dismiss, 15, n.12 (collecting cases). Here, that theory is particularly weak given Plaintiff's own allegation that such fees were waived. Compl. ¶ 236 (FirstBank "waived account service charge fees and wire transfer fees for all of [Epstein's] accounts."). Any remaining doubt as to this theory's viability is removed by the Second Circuit's admonition in *Mueller*, at *6, that "charg[ing] fees as consideration for providing standard financial services, or even charg[ing] risk-adjusted fees to particular customers," is routine banking activity that does not support TVPA liability.[6]

*Second*, the Complaint "does not identify even a single connection or customer FirstBank supposedly gained via Epstein." Defs.' Memo. Supp. Mot. Dismiss, 15. Plaintiff now improperly attempts to avoid that fatal omission in her pleading by claiming, for the first time in briefing, that "FirstBank formed a close relationship with Cecile de Jongh" through Epstein and speculating that this "political connection [] likely resulted in not only financial benefits, but also other regulatory or policy benefits." Opp. at 19–20. But "new facts and allegations, first raised in a Plaintiff's opposition papers, may not be considered in deciding a motion to dismiss." *Logfret, Inc. v. Gerber Fin., Inc.*, 559 F. Supp. 3d 348, 361 (S.D.N.Y. 2021). And even if this speculation were properly before the Court, Plaintiff's guess that

---

[6] Plaintiff correctly notes that this observation was made in the context of the "participation" prong. Opp. at 19. But it is no great leap to conclude from the court's holding that TVPA participation requires more than arm's length banking services that "benefiting" from a venture must also require more than collecting routine service fees.

FirstBank met de Jongh through Epstein and benefited in some unspecified way would not save the Complaint from dismissal. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("naked assertions devoid of further factual enhancement" fail to state a claim).[7]

## II. The Complaint Fails to State a TVPA Obstruction Claim (Count II)

As with the argument on TVPA participation, Plaintiff's TVPA obstruction argument is devoted largely to resisting the current legal standard. This Court has previously ruled that the only enforcement effort that could have been obstructed here is the SDNY investigation that resulted in Epstein's July 2019 arrest. *See Bank of Am.*, 819 F. Supp. 3d at 335. Epstein was arrested on July 8, 2019. Compl. ¶ 290. And Plaintiff does not dispute that FirstBank filed a SAR on July 19, 2019, just *eleven days* later. Compl. ¶ 222. FirstBank also responded to subpoenas in aid of law enforcement investigations.[8]

There is no allegation that anyone at FirstBank knew about the SDNY investigation before the arrest in July 2019 and no suggestion that once FirstBank did learn of that investigation it did anything other than aid it. The best allegation of "obstruction" Plaintiff can muster is that in February 2019, FirstBank "declined to open additional accounts" for Epstein. Opp. at 21. The fact that Plaintiff must rely on a purported decision <u>not</u> to open accounts made five months <u>before</u> the SDNY investigation became public as their best allegation of obstruction confirms that they fail to state a claim.

[7] The two documents cited by Plaintiff (again for the first time in their brief) do not show FirstBank benefitting or gaining a customer relationship from Epstein. Opp. at 18, n.18. EFTA02633183 is an email from de Jongh to Epstein advisor Richard Kahn informing him that FirstBank has denied a request to open accounts. EFTA01896689 is an email where de Jongh says she cannot meet with Epstein at a certain time because she has a pre-existing meeting scheduled at FirstBank. If anything, this email suggests de Jongh had her own separate relationship with the bank independent of Epstein.

[8] *See* EFTA01252357 (FirstBank letter, cited in footnote 5 of the Complaint, providing a list of accounts to law enforcement in "compliance with [a] Subpoena received" from SDNY).

### III. The Complaint Fails to State a Claim Under the Gender-Motivated Violence Protection Act (Count III)

Plaintiff's Opposition confirms that the GMVA claim should be dismissed for four reasons. First, it fails for the same reasons as the TVPA participation claim. *See supra* § I.A. Both laws use the word "participate." Thus, GMVA liability requires more than just an "arm's-length business relationship between a bank and its customers." *Mueller*, at *5. Indeed, the standard for GMVA liability should be even higher. Where the TVPA requires showing "participation" in a "venture"—a GMVA plaintiff must allege "participat[ion] . . . in the commission of a crime of violence." N.Y.C. Admin. Code § 10-1104. Plaintiff has not pled facts showing FirstBank took part in any "crime of violence" against any Epstein victim—let alone a crime against Plaintiff specifically. *See* Defs.' Memo. Supp. Mot. Dismiss § IV.C (GMVA secondary liability requires causal link between alleged misconduct and a specific "crime of violence" against a specific plaintiff).

Second, the GMVA does not apply to FirstBank's alleged out-of-state conduct. *See* Defs.' Memo. Supp. Mot. Dismiss § IV.A. Plaintiff points to the phrase "series of acts" as answer to the cases that support limiting the GMVA's geographic reach to New York City. Opp. 24–25.[9] But it is a "settled rule of statutory interpretation, unless expressly stated otherwise, no legislation is presumed to operate outside the territorial jurisdiction of the state enacting it." *S. H. v. Diocese of Brooklyn*, 167 N.Y.S.3d 171, 177 (2022); N.Y. Stat. Law § 149 (McKinney 2026) ("every statute in general terms is construed as having no extraterritorial effect"). This presumption applies with even greater force to a municipal ordinance. If the drafters had intended to reach conduct in Puerto Rico, the U.S. Virgin Islands, or any other

[9] Plaintiff overreads *M.H. v. S.A.*, No. 531568/2023, 2025 WL 3034263 (N.Y. Sup. Ct. Oct. 29, 2025). There, the court found that "series of acts" subsumes "not only that which transpired within New York City, but also outside New York City as long as the acts are interrelated." *Id*. at 7. That was not a secondary liability case and the court was referring to acts of underlying abuse that occurred in New York City <u>and</u> elsewhere. Here, <u>all</u> of FirstBank's conduct occurred outside of New York City.

jurisdiction, they would have said so expressly rather than smuggling that extraordinary extraterritorial reach in through the phrase "series of acts."[10]

Third, the GMVA revival mechanism is preempted. *See* Defs.' Memo. Supp. Mot. Dismiss § IV.B. It is no answer that dismissal would be premature just because this question has been certified to the New York Court of Appeals. *In re Zyprexa Prods. Liab. Litig.*, 2010 WL 2039010, at *1 (E.D.N.Y. May 19, 2010) (declining to postpone ruling on motion despite pending answers to certified questions and noting that while the certified questions are pending "the law remains unchanged").

Fourth, the 2026 amendment of the GMVA violates due process. *See* Defs.' Memo. Supp. Mot. Dismiss § IV.D. Plaintiff's citation to a case that involved a due process challenge under New York's constitution to a different lookback mechanism is inapposite. Opp. at 25. Unlike in *Carroll v. Trump*, 650 F. Supp. 3d 213, 219 (S.D.N.Y. 2023), the problem here is not just revival of a prior claim despite an expired statute of limitations, but also the retroactive application of forms of secondary liability that had not previously existed. FirstBank could not have "conform[ed] [its] conduct" to a law that had yet to be written. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).

**CONCLUSION**

For the foregoing reasons and those stated in Defendants' opening memorandum, the Court should dismiss the Complaint in its entirety with prejudice.

[10] *Doe v. Doe*, 213 N.Y.S.3d 875, 880 (N.Y. Sup. Ct. 2024) does not hold otherwise. There, the court assumed for purposes of the motion that both plaintiff and defendant were residents of New York City, and the case did not present the issue of extraterritorial application of *secondary* liability.

Dated: August 20, 2026

Respectfully submitted,
/s/ *Felicia H. Ellsworth*

Felicia H. Ellsworth (*pro hac vice*)
Andy O'Laughlin (*pro hac vice*)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
(t) (617) 526-6000
(f) (617) 526-5000
felicia.ellsworth@wilmerhale.com
andy.olaughlin@wilmerhale.com

Boyd M. Johnson III
Christopher Bouchoux
**WILMER CUTLER PICKERING HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
boyd.johnson@wilmerhale.com
christopher.bouchoux@wilmerhale.com

Robert J. Burns
Stosh M. Silivos
Isabel D. Knott
**HOLLAND & KNIGHT LLP**
787 Seventh Avenue, 31st Floor
New York, NY 10019
(t) 212-513-3200
(f) 212-385-9010
robert.burns@hklaw.com
stosh.silivos@hklaw.com
Isabel.knott@hklaw.com

Alex M. Gonzalez (*pro hac vice*)
Israel J. Encinosa (*pro hac vice*)
Barbara A. Martinez (*pro hac vice*)
**HOLLAND & KNIGHT LLP**
701 Brickell Avenue
Suite 3300
Miami, FL 33131
(t) 305-374-8500
(f) 305-789-7598
alex.gonzalez@hklaw.com
israel.encinosa@hklaw.com
barbara.martinez@hklaw.com

*Counsel for Defendants FirstBank Puerto Rico and First BanCorp*

**CERTIFICATE OF COMPLIANCE**

I, Felicia H. Ellsworth, hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing memorandum of law was prepared using Microsoft Word and complies with Rule 2(e) of this Court's Individual Rules and Local Civil Rule 7.1(c).

*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth