UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIA MOLCHONOVA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIRSTBANK PUERTO RICO and FIRST BANCORP,<br><br>Defendants. | 26-cv-5327 (JSR)<br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION |

JED S. RAKOFF, U.S.D.J.

On October 20, 2026, this Court issued a "bottom-line" Order granting the motion of the lead plaintiff, Julia Molchonova, to certify this as a class action pursuant to Fed. R. Civ. P. 23. See ECF No. 81. In that Order, the Court certified the following class: All women who were abused or trafficked by Jeffery Epstein at any time between January 1, 1998, and August 10, 2019. Id. This Opinion sets forth the reasons for that Order and formally grants certification.

## I. Background

The Court assumes familiarity with the factual background and procedural history of this case. See Molchonova v. FirstBank Puerto Rico, No. 26-CV-5327 (JSR), 2026 WL 3072727, at *1-2

(S.D.N.Y. Oct. 14, 2026) (Molchonova I).[1] As relevant here, Molchonova alleges that she, like numerous other young women and girls, was sexually abused and trafficked by Jeffrey Epstein and his co-conspirators. She further claims that the defendants, FirstBank Puerto Rico and First BanCorp (collectively "FirstBank"), knowingly provided key parts of the financial infrastructure that Epstein and his co-conspirators needed to operate their global sex trafficking operation. In other words, according to Molchonova, FirstBank was a knowing participant in the Epstein venture.

Molchonova brought claims against FirstBank on behalf of herself and a putative class of Epstein victims under the Trafficking Victims Protection Act ("TVPA") and the New York City Gender-Motivated Violence Protection Act ("GMVPA"). She now moves to certify that class. Briefing on the motion was completed on October 8 and the Court heard oral argument shortly thereafter. Upon consideration of the record, as well as the arguments of

[1] Except where otherwise indicated, all quotations in this Opinion omit citations, quotation marks, footnotes, brackets, ellipses, and other non-substantive alterations in source material.

counsel, the Court granted Molchonova's motion. This Opinion states the reasons for that ruling.

**II. Legal Standard**

As the party seeking class certification, Molchonova bears the burden of showing by a preponderance of the evidence that the requirements of Fed. R. Civ. P. 23 have been met. Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010). Fed. R. Civ. P. 23(a) "requires that a proposed class action (1) be sufficiently numerous, (2) involve questions of law or fact common to the class, (3) involve class plaintiffs whose claims are typical of those of the class, and (4) involve a class representative or representatives who adequately represent the interests of the class." Id.; see Fed. R. Civ. P. 23(a). In addition, Molchonova must show that the proposed class meets the Second Circuit's implied fifth requirement of ascertainability. See In re Petrobras Sec., 862 F.3d 250, 264 (2d Cir. 2017). Finally, Molchonova must show that the proposed class meets at least one of the three requirements of Fed. R. Civ. P. 23(b). Here, Molchonova seeks to certify the class pursuant to Fed. R. Civ. P. 23(b)(3). Accordingly, she must also "show that questions of law or fact common to class members predominate over any questions affecting only individual members and that class treatment would be superior to individual litigation." Myers, 624 F.3d at 647.

## III. Analysis

### A. Rule 23(a)

As noted, Fed. R. 23(a) imposes four requirements: numerosity, commonality, typicality, and adequacy. The Second Circuit also imposes an fifth implied requirement that the proposed class be ascertainable. The Court considers each of these five requirements in turn.

1. Numerosity

To satisfy Rule 23(a), the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Courts in the Second Circuit presume that the numerosity requirement is met is the putative class has forty or more members." Polvay v. FCTI, Inc., 713 F. Supp. 3d 1, 10 (S.D.N.Y. 2024). The proposed class easily clears this bar.

To assess numerosity, the Court ordered certain summary information be produced to the Court and the parties by the Claims Administrator appointed in Doe v. Bank of America, N.A., 25-cv-8520, Doe v. JP Morgan, 22-cv-10019, and Doe v. Deutsche Bank, 22-cv-10018. See ECF Nos. 80-81. These three cases all concerned analogous TVPA claims brought against financial institutions based on their alleged participation in Epstein's sex trafficking venture. See Doe 1 v. Deutsche Bank Aktiengesellschaft, 671 F. Supp. 3d 387 (S.D.N.Y. 2023); Doe v. Bank of Am., N.A., 819 F. Supp. 3d 314 (S.D.N.Y. 2026). Importantly, the classes in these

cases all consisted of Epstein's trafficking victims. Accordingly, numerical information about the approved claims in those cases offers an accurate low-end estimate of the size of the proposed class in this case.

Among the claims approved in those three cases, 218 were submitted by people who were abused or trafficked by Epstein, at least in part, in 1998 or later.[2] This alone strongly suggests that the number of individuals abused or trafficked by Epstein during the operative period well exceeds the 40-person threshold required for a presumption of numerosity.

With respect to numerosity, FirstBank principally argues that because the TVPA imposes a ten-year statute of limitations, see 18 U.S.C. § 1595(c)(1), the class must be limited to individuals who were abused or trafficked by Epstein on or after June 24, 2016. As FirstBank points out, in Novella v. Westchester County, the Second Circuit declined to certify a class because it could not "tell how many of the class members' claims [were] timely." 661 F.3d 128, 148 (2d Cir. 2011). Instead, the Court remanded the case to the

---

[2] Citing documents released pursuant to the Epstein Files Transparency Act ("EFTA"), Molchonova alleged that Epstein's oldest accounts with FirstBank were opened in 1998. See ECF No. 1 ¶ 4 ("Compl."). In its answer, FirstBank admitted that "Epstein opened an account with Chase Manhattan Bank in the U.S. Virgin Islands in 1998 and FirstBank later acquired Chase's USVI operations in 2002." ECF No. 78 ¶ 1.

district court "for consideration of whether there are enough class members with timely claims to merit certification." Id.

On the facts of this case, however, the TVPA's statute of limitations is not an obstacle to finding numerosity. Specifically, the Claims Administrator stated that, among the claims approved in the three prior cases, 51 were submitted by people who were abused or trafficked by Epstein, at least in part, in 2016 or later. Therefore, even if the Court were to evaluate numerosity based only on the number of individuals with claims arising within 10 years of the filing of the instant lawsuit, the class would still be sufficiently numerous to satisfy Rule 23(a)(1).[3]

Molchonova has also established numerosity with respect to the GMVPA claim. To be sure, as this Court discussed in its decision on FirstBank's motion to dismiss, the GMVPA, as a New York City law, does not have an infinite and unbounded geographic reach. See Molchonova I, at *8. A claim arising outside of New

[3] Of course, at this stage, Court does not pass on whether the TVPA's statute of limitations bars all — or any — claims brought by individuals who were trafficked by Epstein prior to 2016. As Molchonova points out, the doctrines of equitable tolling and continuing violation may be available to certain claimants and would extend the statute of limitations beyond the otherwise applicable ten years. See Hongxia Wang v. Enlander, No. 17 CIV. 4932 (LGS), 2018 WL 1276854, at *3-4 (S.D.N.Y. Mar. 6, 2018); Doe 3 v. Indyke, 801 F. Supp. 3d 200, 207-08 (S.D.N.Y. 2025). The Court expresses no view on these merits questions. For now, it suffices to conclude that "there are enough class members with timely claims to merit certification." Novella, 661 F.3d at 148.

York City, and having no conceivable relationship with the city, would very likely fall outside the ambit of the GMVPA. This Court concluded, however, that "where, as alleged here, a financial institution knowingly facilitates gender-motivated violence organized from, occurring within, and impacting residents of New York City, the GMVPA provides victims with a remedy, even when that institution is located outside the City." Id. Here, the Claims Administrator reports, among the claims approved in the three prior cases, 157 were submitted by people who were abused or trafficked by Epstein, at least in part, in New York City, and at least in part, in 1998 or later.[4] That suffices to establish numerosity with respect to the GMVPA claim.

2. Commonality

To satisfy Rule 23(a), Molchonova must also show that there is at least one "common issue that drives the resolution of the litigation such that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 84 (2d Cir. 2015); see also Pub. Employees' Ret. Sys.

[4] The Court does not suggest at this stage that only people who were abused or trafficked in New York City may assert GMVPA claims. As discussed in the Court's opinion on FirstBank's motion to dismiss, several other factors are relevant to this determination. See Molchonova I, at *8. Here, the Court merely concludes that, even adopting a narrow view of the reach of the GMPVA, the class is still sufficiently numerous to satisfy Rule 23(a)(1).

of Mississippi v. Merrill Lynch & Co., 277 F.R.D. 97 (S.D.N.Y. 2011) ("Even a single common question of law or fact may suffice to satisfy the commonality requirement . . . ."). Where, as here, "the same conduct or practice by the same defendant gives rise to the same kind of claims for all class members, there is a common question." Polvay, 713 F. Supp. 3d at 11; see also Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 137-38 (2d Cir. 2015).

In this case, Molchonova has identified at least four common issues:

(1) Whether Jeffrey Epstein ran a sex-trafficking venture;

(2) Whether FirstBank knew or should have known about Epstein's sex-trafficking venture;

(3) Whether FirstBank participated in Epstein's sex trafficking venture

(4) Whether FirstBank benefited from its participation in Epstein's sex trafficking venture.

See ECF No. 59, at 5; see also Doe 1 v. JPMorgan Chase Bank, N.A., No. 22-CV-10019 (JSR), 2023 WL 3945773, at *4 (S.D.N.Y. June 12, 2023) (concluding that similar issues satisfied the commonality requirement in a closely analogous case). FirstBank concedes, and the Court likewise concludes, that the proposed class satisfied the commonality requirement.

3. Typicality

Next, Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality refers to the nature of the claim of the class representatives, and not to the specific facts from which the claim arose or relief is sought." New Jersey Carpenters Health Fund v. Residential Cap., LLC, 272 F.R.D. 160, 165 (S.D.N.Y. 2011), aff'd sub nom. New Jersey Carpenters Health Fund v. Rali Series 2006-Q01 Tr., 477 F. App'x 809 (2d Cir. 2012). Moreover, "the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000). Accordingly, "courts in this Circuit have held that the typicality requirement is not demanding." Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co., 277 F.R.D. 97, 107 (S.D.N.Y. 2011).

Molchonova "must show that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove [FirstBank's] liability." Polvay, 713 F.3 Supp. 3d at 11. She argues that her claims, like those of every class member, arise from the same operative course of events: (1) Epstein's sex-trafficking venture, which victimized young women and girls using a well-known and consistent modus operandi, and (2) FirstBank's provision of financial services to Epstein and his

co-conspirators, which, according to Molchonova, was "uniform" and "extensive." ECF No. 59, at 8. The Court agrees.

FirstBank argues that Molchonova is atypical of the class because she occupied an unusual position within Epstein's operation, such that she "could be deemed one of Epstein's unnamed co-conspirators." ECF No. 17, at 17. Further, FirstBank urges, Molchonova was subject to coercion by Epstein based on unique vulnerabilities that other putative class members did not share. And more generally, FirstBank argues that Epstein subjected each victim to a different set of pressures and exploited their own particular vulnerabilities, such that Molchonova is neither representative nor typical of these broad and varied experiences.

These purported differences between Molchonova and other class members do not render her claims atypical. As this Court has previously discussed, Epstein's "pattern was to use prior victims to lure young, vulnerable victims, bring the victim to his home, sexually abuse the victim during a massage, and then provide the victim with cash or something else of value." Doe 1 v. JPMorgan Chase Bank, N.A., No. 22-CV-10019 (JSR), 2023 WL 3945773, at *9 (S.D.N.Y. June 12, 2023). Molchonova's claims are entirely consistent with this pattern of trafficking and abuse. Moreover, FirstBank has not identified any unique defenses that would arise from the differences in Molchonova's experience, much less shown

that any "threaten to become the focus of the litigation." Baffa, 222 F. 3d at 59.

FirstBank notes that, while the class period spans the entirety of FirstBank's alleged relationship with Epstein, Molchonova's claims did not arise until more than halfway through that period. See ECF No. 71-2, at 34:5. FirstBank argues that class members whose claims arose earlier would need to establish FirstBank's knowledge and participation in the Epstein venture based on different facts from those relevant to Molchonova's later-arising claims. This does not render Molchonova atypical of the class. Molchonova's claims against FirstBank arise out of the alleged existence of a continuous and consistent relationship between FirstBank and Epstein, which began before and continued throughout the period of time when she was a victim of Epstein's sex trafficking venture. Of course, the merits of the these claims will turn in part on the degree and timing of FirstBank's knowledge and participation in the Epstein venture. And the outcome of that merits determination may ultimately bear on which class members, if any, can recover. But that is no obstacle to a finding of typicality.

Finally, FirstBank argues that, because Molchonova alleged abuse spanning from 2012 to 2019, her claims are subject to a different statute of limitations defense than would be applicable to class members whose claims arose entirely before or after 2016.

This, too, is unavailing. As this Court reasoned in a previous case concerning similar claims, since FirstBank appears likely to raise a statute of limitations defense to "many, if not most, members of the proposed class," the existence of a statute of limitations defense to Molchonova's claims "does not make [her] atypical; it confirms her typicality." JP Morgan, 2023 WL 3945773, at *6. Accordingly, the Court concludes that Molchonova has satisfied the typicality requirement under Fed. R. Civ. P. 23(b)(3).

4. Adequacy

Rule 23(a) next requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement entails an inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." Polvay, 713 F. Supp. 3d at 11. The Court concludes that both conditions are easily met.

Beginning with Molchonova, the Court concludes that her interests in securing judgment against FirstBank plainly align with those of the class as a whole. Indeed, as Molchonova points out, she has already zealously litigated the instant suit through a motion to dismiss and a motion for class certification, and she has sat for multiple depositions in this and a previous related

case. The Court has no doubt that Molchonova is an adequate representative of the class. Likewise, the Court concludes, as it has before, that Molchonova's counsel is qualified, experienced, and able. See JP Morgan, 2023 WL 3945773, at *7.

FirstBank principally argues that there is "an inherent conflict within the proposed class." ECF No. 70, at 17. FirstBank points to allegations that certain women in the proposed class recruited other class members and thereby participated in their trafficking. This Court has previously considered and rejected a substantially similar argument with respect to Epstein's victims. See JP Morgan, 2023 WL 3945773, at *7 ("Even if Jane Doe helped Epstein to recruit other members of the class in the past, she shares a common interest with them now in securing a judgment against JP Morgan."). Likewise, here, regardless of whether certain class members may have recruited others, their interests as against FirstBank in the instant action are not in tension.[5]

In sum, the Court concludes that Molchonova has satisfied the adequacy requirement under Fed. R. Civ. P. 23(a)(4).

5. Ascertainability

Finally, to satisfy the implied requirement of ascertainability, Molchonova must show that the "proposed class is

[5] In opposition to Molchonova's instant motion, FirstBank argued that the inclusion in the class defintion of "women who were sexually abused or trafficked by Jeffrey Epstein or Epstein's coconspirators," ECF No. 59, at 6 (emphasis added), exacerbated

defined using objective criteria that establish a membership with definite boundaries." In re Petrobras, 862 F.3d at 257. This is not a demanding standard, as it requires only that "determinations as to class membership are objectively possible." Fikes Wholesale, Inc. v. HSBC Bank USA, N.A., 62 F.4th 704, 717 (2d Cir. 2023). The Court concludes that the class definition — as herein modified by the Court — satisfies this requirement.

FirstBank takes issue with the absence of definite start and end dates in Molchonova's proposed class definition, as well as its reference to unidentified Epstein co-conspirators, Epstein-related entities, and Epstein-related accounts. The class definition the Court has adopted shares none of these alleged problems. It includes definitive start and end dates and is otherwise defined with reference to a clear and objective determination: whether a woman was abused or trafficked by Jeffery Epstein. As this Court previously reasoned, while this is a factual determination, it is one that made objectively based on readily available sources of information. See JP Morgan, 2023 WL 3945773,

---

this issue since "[a] representative cannot fairly protect the interests of a class whose members may need to establish one another's responsibility for the conduct at issue," ECF No. 70, at 22. However, the class definition that the Court certified is limited to women "who were abused or trafficked by" Epstein and excludes the language "or Epstein's coconspirators."

at *5. The Court therefore concludes that the herein adopted class definition is ascertainable.

6. Conclusion

Taken together, the Court concludes that the proposed class satisfies the five threshold requirements under Fed. R. Civ. P. 23(a). The Court now turns to the requirements imposed by Fed. R. Civ. P. 23(b)(3).

**B. Rule 23(b)**

Molchonova seeks class certification under Rule 23(b)(3), which imposes two requirements: First, "that the questions of law or fact common to class members predominate over any questions affecting only individual members"; and second, "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court takes each in turn.

1. Predominance

Rule 23(b)(3) requires that common questions of law or fact predominate over questions that affect only individual class members. See Fed. R. Civ. P. 23(b). The essence of this inquiry is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 512 (2d Cir. 2020). Accordingly, "[a] court examining predominance must assess (1) the elements of the claims and defenses to be litigated, (2) whether generalized evidence

could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each member's entitlement to relief, and (3) whether the common issues can profitably be tried on a class-wide basis, or whether they will be overwhelmed by individual issues." However, "[t]he mere existence of individual issues will not be sufficient to defeat certification." Sykes, 780 F.3d at 87. "Rather, the balance must tip such that these individual issues predominate." Id. Ultimately, this "is a qualitative inquiry that entails careful scrutiny of the nature and significance of a case's common and individual issues." Haley v. Tchrs. Ins. & Annuity Ass'n of Am., 54 F.4th 115, 121 (2d Cir. 2022).

The Court begins with the elements of Molchonova's TVPA and GMVPA claims. See Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc., 77 F.4th 74, 85 (2d Cir. 2023). Participant liability under the TVPA "involves three elements: first, that the defendant participated in a commercial sex trafficking venture; second, that the defendant knew or should have known that the venture either involved the perpetrator's use of force, the threat of force, fraud, or coercion to cause the victims to participate in sex or that the venture involved sex with victims who were under the age of 18; and third, that the defendant benefited from its participation in the venture." Molchonova I, at *4; see 18 U.S.C. § 1591(a)(2). As for the GMVPA, Molchonova must ultimately prove

that FirstBank "committed, directed, enabled, participated in, or conspired in the commission of a predicate crime, and that (1) the predicate crime constitutes a misdemeanor or felony against the person; (2) that was perpetrated because of plaintiff's gender; (3) in part because of animus against plaintiff's gender; and (4) resulted in injury." Molchonova I, at *7.

The elements of these two claims embrace a common core of load-bearing questions. Each class member must establish that Jeffrey Epstein operated a sex trafficking venture, that FirstBank participated in that venture,[6] and that FirstBank knew or should have known about the existence of the Epstein venture. For purposes of the TVPA claim, each plaintiff must also prove that FirstBank

[6] FirstBank argues that the GMVPA claim is unsuitable for class-wide resolution because, among other reasons, the GMVPA requires more than "mere participation" in a sex trafficking venture to establish liability. ECF No. 70, at 4-5. This argument is unavailing. The Court has already concluded that participation for purposes of the TVPA qualifies as participation for purposes of the GMVPA as well. See Molchonova I, at *9. FirstBank also argues that the limited territorial reach of the GMVPA requires an individualized inquiry into the precise facts of each victim's claim. The Court is not persuaded. While the Court has held that the GMVPA requires a certain quantum of connection to New York City, see Molchonova I, at *8, much of the inquiry can be resolved on a class-wide basis. For instance, whether "FirstBank's alleged participation in the Epstein sex-trafficking venture was substantially directed towards New York City, because much of Epstein's enterprise was based in, and coordinated from, New York City" is a common question that is susceptible to class-wide resolution. Moreover, even if the Court later determines that only victims who were residents of, or were trafficked or abused within, New York City can assert a GMVPA claim, that issue could easily be managed later in the litigation by narrowing the class appropriately as to that claim.

benefited from its participation in the Epstein venture. And for purposes of the GMVPA claim, each plaintiff must prove that the Epstein venture subjected its victims to a predicate crime within the meaning of the statute. In sum, the nature and existence of the Epstein venture and FirstBank's role with respect to that venture — questions that form the beating heart of this case — can be resolved with generalized proof and class-wide arguments.

FirstBank identifies four issues that, it argues, require individualized resolution and preclude a finding of predominance. The Court disagrees.

First, FirstBank argues that each class member must establish that they were personally forced, defrauded, or coerced into engaging in commercial sex acts within the meaning of the TVPA. Molchonova does not argue that force or fraud are susceptible to common resolution. Instead, she argues that the relevant focus of the TVPA claim is whether each class member was subject to <u>coercion</u> by Epstein in the course of the Epstein venture. This Court has previously endorsed a version of this argument and does so again here. <u>See</u> <u>JP Morgan</u>, 2023 WL 3945773, at *9.

Coercion under the TVPA is assessed using "a hybrid objective-subjective test . . . , which asks whether a reasonable person of the same background and circumstances would have also felt coerced, taking into consideration the particular vulnerabilities of a person in the victim's position." <u>Id.</u>; <u>see</u> <u>United States v. Rivera</u>,

799 F.3d 180, 186-87 (2d Cir. 2015). Moreover, and importantly, the essence of Molchonova's claims is that Epstein employed a common modus operandi across all his victims. As Molchonova characterizes it, "Epstein or his co-conspirators lured young, vulnerable victims, like [Molchonova], with promises of money, opportunities, or access to powerful individuals, sexually abused them, often during a massage, and then gave them cash or something else of value." ECF No. 75, at 7; see Compl. ¶¶ 33, 147, 152. Whether Epstein operated according to this common pattern of abuse and exploitation, and whether this pattern was coercive within the meaning of the TVPA, are common questions susceptible to generalized proof.

It well may be, as FirstBank points out, that the precise way in which this pattern manifested for each individual victim differed from person to person. Because each person has their own unique set of characteristics, what was coercion for some may not necessarily be coercion for others. Indeed, as this Court has previously recognized, "whether Epstein coerced each class member is not entirely capable of common proof." Doe 1, 2023 WL 3945773, at *9 n.9. FirstBank is therefore free to argue at a later stage that individual putative class members were not coerced within the meaning of the TVPA. Nevertheless, for purposes of class certification, the Court concludes that the common questions

relevant to Epstein's operation and its impact on its victims predominate over these individual issues.

FirstBank next argues that determining whether it knowingly participated in the Epstein venture requires an individualized inquiry for each specific claim. On this point, FirstBank points to two TVPA elements, knowledge and participation, that it argues, turn on individualized inquiries. But the nature of FirstBank's knowledge of, and involvement with, the Epstein venture is a quintessentially common question capable of class-wide resolution and subject to common sources of proof. As to participation, the relevant inquiry is whether "FirstBank took part in an enterprise or undertaking that involved elements of risk, potential gain, or both." Molchonova I, at *4; see Mueller v. Deutsche Bank Aktiengesellschaft, 185 F.4th 307, 313 (2d Cir. 2026). This inquiry, which hinges on the specific services that FirstBank provided to Epstein, must, by and large, be resolved based on class-wide argument and evidence, such as FirstBank's own records.

Concerning FirstBank's knowledge, as this Court has previously explained, "the TVPA does not require that the defendant know or recklessly disregard the fact that the force, fraud, or coercion was used with respect to plaintiff herself." Molchonova I, at *6. Thus, the knowledge inquiry need not proceed victim-by-victim, but can instead be largely addressed on a class-wide basis. That FirstBank's awareness of the Epstein venture may have changed

over time — or that evidence of FirstBank's knowledge may be relevant to certain time periods and not others — does not transform the inquiry into an individualized one. What FirstBank knew, or should have known, and when, is well-suited for common evidence and class-wide resolution.

Finally, FirstBank argues the 10-year statute of limitations applicable under the TVPA requires an individualized inquiry into the timing of each class member's claim. In FirstBank's view, each plaintiff must establish that their claim arose, or they turned eighteen-years-old, on or after June 24, 2016. Assuming arguendo that FirstBank's position is correct, the Court sees no reason that the class could not be managed at a later stage to address statute-of-limitations issues. See Doe 1, 2023 WL 3945773, at *10. In any event, any individual claim-accrual issues are substantially outweighed by the predominating common issues discussed above.

2. Superiority

Finally, Rule 23(b) requires that the class action device "is superior to other available methods" for adjudicating the case. Fed. R. Civ. P. 23(b)(3). The factors relevant to superiority include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or

undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Id. In a previous case concerning a substantially similar class, this Court had "little problem in concluding that this requirement is satisfied." Doe 1, 2023 WL 3945773, at *11. The Court reaches the same conclusion here.

The class members' claims concern deeply personal and highly sensitive subject matter. Requiring each individual victim to litigate her own case against a large financial institution would impose a painful and traumatic burden – one that Molchonova has already agreed to bear as the representative plaintiff. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 616-17 (1997) Moreover, discovery concerning Molchonova's claims against FirstBank is nearly complete, and, as discussed throughout this Opinion, the great majority of evidentiary issues relevant to Molchonova's claims are common to the class. Thus, in this case, "substituting a single class action for numerous trials in a matter involving substantial common legal issues and factual issues susceptible to generalized proof will achieve significant economies of time, effort and expense, and promote uniformity of decision." In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 130 (2d Cir. 2013). The Court concludes that proceeding by class action in this case presents a far more manageable path to efficiently resolving the class members' claims than requiring each class member to

litigate their own claims. See Sykes, 780 F.3d at 82 (explaining that "manageability is, by far, the most critical concern in determining whether a class action is a superior means of adjudication").[7]

**IV. Conclusion**

In sum, the Court concludes that the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) are met. Thus, for the foregoing reasons, the Court issued its October 20, 2026 "bottom-line" Order certifying this as a class action. See ECF No. 81. The Court now formally reconfirms that Order. Additionally, the Court hereby appoints Julia Molchonova as class representative and appoints Boies Schiller Flexner LLP and Edwards Henderson PLLC as class counsel. See Fed. R. Civ. P. 23(g)(1).

SO ORDERED.

New York, NY
November 12, 2026

JED S. RAKOFF, U.S.D.J.

[7] FirstBank argues that the benefits and efficiencies of class-wide adjudication will be significantly lessened because individualized proceedings will still be required to establish the class members' claims. For substantially the reasons discussed when considering predominance, the Court concludes that the bulk of the legal and factual issues in this case are susceptible to common evidence. Thus, the presence of some individual issues requiring resolution does not substantially undermine the overall efficiency of proceeding as a class action.